## AMPARO MINING COMPANY

*v.*

## FIDELITY TRUST COMPANY, executor, &c., of Edward M. Paxson.

### [Decided April 13th, 1908.]

1. An action by a home corporation against a foreign corporation not engaged in business in this state, and without any office, agent, or place of business in the state, to establish title to treasury shares of the capital stock of complainant, which defendant claims to own absolutely, but which complainant alleges were held by defendant's testator in his lifetime as security for the payment of a sum of money, is an action *quasi in rem*, although complainant asks for a transfer of the shares of stock, and no receiver has been appointed to take possession of the *res*, and therefore is within the jurisdiction of the court of chancery, and defendant, having been duly notified of the suit by the statutory publication of notice, and actual service of notice of the suit, and of the order requiring it to appear and plead on or before a time stated, will be bound by the decree, if it refrains from appearing, so far as the same relates to the status of the stock.

2. The essential elements of an action *quasi in rem* are a *res* located within the territorial limits of the state in such a way that the state can exercise absolute power to control and dispose of it, a course of judicial procedure, the object of which is to subject the *res* to the power of the state directly by the judgment or decree, which is entered as distinguished from a course of procedure which only disposes of the *res* by compelling a party to control or dispose of the *res*, and a course of judicial procedure on its face directed sufficiently toward the *res* so as to disclose this *res* to the defendant when reasonably notified of the action.

3. The notice to non-resident defendants prescribed by *P. L. 1902 p. 514* §§ *12, 13*, directing service on non-resident defendant by notice, the form and scope of which shall be prescribed by the chancellor, and rule 58 of the chancery court, stating that the notice shall state "the object of the suit and why the persons to whom it [*i. e.*, the notice] is addressed are made defendants," require that the notice shall apprise the defendant, not only that he is sued, but also of the nature of the suit, and disclosure of the *res* toward which the suit is directed.

4. The jurisdiction in actions *quasi in rem* is based on the power of the sovereign state to exercise control over all objects to which that power can be directly applied.

5. Where an action is brought which involves property within the state, and non-resident defendants are fairly notified of the action, and have ample opportunity to appear and be heard therein, the rights of all parties interested in such property are determined in such action by due process of law.

6. An action strictly *in personam* for the recovery of corporate stock, the *situs* of which is in the state, may be brought in the chancery court.

7. Where a holder of an equitable title to chattels takes possession, he thereby acquires a legal title, as the only right in respect to the chattels remaining in the original holder of the legal title is to convey the same to the holder of the equitable title, and this right of the holder of the equitable title is further established by *P. L. 1902 p. 524* (section 44 of the revised Chancery act of 1902), providing that "the decree of the court of chancery shall * * * have the force, operation and effect of a judgment at law in the supreme court of this state," and *P. L. 1902 p. 526 § 46*, providing that, when a complainant obtained a decree the court of chancery should have power "to cause by injunction the possession of the effects and estate demanded by the bill, and whereof the possession or a sale is decreed, to be delivered to the complainant or otherwise according to such decree and as the nature of the case may require," and therefore a court of equity may acquire jurisdiction of a suit to establish rights in personal property in the custody of a person in this state, as against a non-resident, as such a suit would be one *quasi in rem;* a decree *in personam* not being necessary to transfer the legal title to complainant.

8. A contention that jurisdiction cannot attach for the reason that the court cannot enforce its decree cannot be sustained, since the court can enforce the decree by the appointment of a receiver to take possession of the property, and by a decree enjoining the custodian from interfering with the receiver's possession.

9. But such jurisdiction is not dependent on the action of the complainant in moving for, or actually obtaining, the appointment of a receiver, or the issuance of an injunction, but on the existence of the power to seize the property; and a mere possibility that the court's decree may be rendered nugatory by a removal of the property from the state does not destroy the quality of the suit as one *quasi in rem.*

10. Nor is the character of such suit as one *quasi in rem* taken away by the fact that the suit is brought by the custodian of the property, since the same remedies for the enforcement of the decree may be applied at the instance of the defendant.

———

Heard on plea to the jurisdiction.

*Messrs. French & Richards,* for the complainant.

*Messrs. Lindabury, Depue & Faulkes,* for the defendant.

STEVENSON, V. C.

The complainant is a New Jersey corporation and the defendant is a corporation existing under the laws of Pennsylvania, in which state it has its office and conducts its business. The object of the bill is to establish title to five hundred and forty-nine thousand five hundred and four shares of the capital stock of the complainant, of the par value of $1 per share, which the defendant claims to own absolutely. The bill alleges that the defendant's testator acquired these shares of stock under such circumstances that his executor and trustee, the defendant, must be deemed to hold the same in trust for the complainant; that the sole interest of the defendant in these shares of stock is the right to hold them as security for the sum of $40,000, advanced by the defendant's testator in his lifetime, in the business of acquiring the shares as agent or trustee for the complainant. The bill shows that the shares of stock in question are what are commonly called treasury stock, *i. e.,* stock once lawfully issued which may be held by or on behalf of the complainant, and lawfully transferred at any time. The bill does not set forth a claim that the defendant is holding shares of stock which upon payment of $40,000, should be surrendered for cancellation, or that upon such surrender the shares would *ipso facto* be retired. According to the allegations of the bill, the shares will remain definite personal property belonging to the complainant in case its title to them shall be established in this suit, having the same legal status as if they were shares of stock in some other New Jersey corporation.

The plea to the jurisdiction is substantially the same as that which was sustained in the case of *Wilson* v. *American Palace Car Co., 65 N. J. Eq. (20 Dick.) 730.* It sets forth in effect that the defendant is a Pennsylvania corporation not engaged in business in New Jersey and without any office, agent or place of business in New Jersey, and that it has been proceeded against as an absent defendant under our statute by publication and actual service of notice of the suit, and of the order requiring the defendant to appear and plead, answer or demur to the bill of complaint on or before a time stated. It is not suggested that ample notice of the existence of the suit and of its precise

nature has not been given, and in fact the plea exhibits such an ample notice. The sole bar which the plea attempts to raise to the action is the same which was adjudged effective by the court of errors and appeals in the *American Palace Car Company Case* above mentioned. In that case the plea was held good because the court found that the action was strictly *in personam*, and not either an action *in rem* or an action *quasi in rem*. It must be conceded that if this present action is strictly *in personam* the plea is good and must be sustained. It is obvious that the present action is not strictly *in rem*. The question which must determine the validity of this plea is whether or not this action belongs to that class of actions having some of the characteristics of an action strictly *in personam*, and some of the characteristics of an action strictly *in rem*, which of late years have been styled actions *quasi in rem*. If this is an action *quasi in rem*, the plea is bad and must be overruled.

The principles which control the decision of the present case are all contained, I think, in the opinion of Vice-Chancellor Stevens in the case of *Andrews* v. *Guayaquil, &c., Railway Co., 69 N. J. Eq. (3 Robb.) 211 (1905)*, in which case I understand the decree was affirmed by the court of errors and appeals upon the vice-chancellor's opinion. The same principles are again laid down and applied by Vice-Chancellor Howell in the case of *Sohege* v. *Singer Manufacturing Co., 73 N. J. Eq. (3 Buch.) 567 (1907)*. It seems to me that these two recent decisions of this court control the present case, and necessarily lead to the conclusion that the defendant's plea to the jurisdiction should be overruled. The essential facts, the controlling facts, in these two cases, in my judgment, are the same as in the case at bar so far as those facts fix the character of the actions as actions *quasi in rem*. Nevertheless, the above-mentioned two cases certainly present facts not found in the present case, and the present case exhibits facts not found in either of those cases. It is argued on behalf of the defendant that even although this court and the court of errors and appeals have fixed the character of the *Guayaquil, &c., Railway Company Case* as an action *quasi in rem*, nevertheless the action set forth in the complainant's bill in this case is strictly *in personam*. It must be conceded that there is no de-

cided case in New Jersey presenting precisely the same set of facts with which we have to deal in this present case, nor has my attention been called to any decision of any court in which the attempt is made to point out and define the essential characteristics of all actions *quasi in rem.*

In endeavoring to determine whether the action disclosed by the bill of complaint is one strictly *in personam,* or *quasi in rem,* it may be well to bear in mind the respects wherein that case differs from both the *Guayaquil, &c., Railway Company Case* and the *Singer Manufacturing Company Case.* In the case at bar we have a sole complainant resident in New Jersey, and a sole defendant resident in Pennsylvania. Unlike the *Guayaquil, &c., Railway Company Case* the defendant has not in any way directly, or through an agent, instituted any action in New Jersey affecting the *res,* which beyond all doubt is located in New Jersey. In the *Guayaquil, &c., Company Case* (and the same was true in the *Singer Manufacturing Company Case*) the *res* was capital stock of a New Jersey corporation, but was not the capital stock of the complainant corporation, as counsel for the defendants have erroneously alleged in their elaborate and learned brief. But, further, in the case at bar no receivership is prayed for, and no party having the custody of the *res* is brought in as a defendant in order to subject the *res* to the control of the court. The situation seems to be analogous to one where a complainant in New Jersey, holding the possession of chattels, files a bill in this court to obtain equitable relief against a defendant not resident in New Jersey, in respect to such chattels. This case will also, I think, appear on further consideration to be analogous to a suit in this court for divorce brought by a resident of New Jersey against his non-resident spouse.

. The authorities which control this court indicate, I think, the following as the essential elements of an action *quasi in rem:*

1. A *res* located within the territorial limits of the state in such a way that the state can, if it see fit to do so, exercise absolute power to control and dispose of it.

2. A course of judicial procedure, the object and result of which are to subject the *res* to the power of the state, directly

by the judgment or decree which is entered as distinguished from a course of procedure which only affects or disposes of the *res* by compelling a party to the action to control or dispose of the *res* in accordance with the mandate of the judgment or decree.

3. A course of judicial procedure on its face directed specifically toward the *res* so as to disclose this *res* to the defendant when reasonably notified of the action. The failure to recognize this element, it seems to me, vitiates the argument contained in the minority opinion of Mr. Justice Hunt in *Pennoyer* v. *Neff, 95 U. S. 714 (1877).* A citizen of New Jersey when notified that an action has been brought against him for the recovery of a money judgment in the State of Colorado, may elect to disregard the notice so received. He may prefer not to appear and have his case tried under disadvantageous circumstances in a remote court, the result of which would be a judgment binding upon him. He may not know that he has any property situate within the jurisdiction of the Colorado court. The Colorado action out of which arose the case of *Pennoyer* v. *Neff,* was not specifically directed toward the *res,* nor was any effort made to notify the defendant, the non-resident owner of the *res,* that any such *res* existed, or that the action had any relation to it. The course of procedure prescribed by the Colorado statute and pursued in the case above mentioned, in respect of the matters now under consideration, is analogous to a foreclosure suit brought in New Jersey against an owner of the equity of redemption residing in New York, in which the notice of the suit served or published merely states that an action in the court of chancery of New Jersey has been brought against the non-resident defendant, without further informing him that the object of the action as described in the bill of complaint is to foreclose a mortgage on land belonging to the defendant and situate in New Jersey. An heir of the mortgagor residing in a foreign state may not have the slightest knowledge of the existence of the *res* of which he is the owner or part owner.

The notice to non-resident defendants prescribed by our Chancery act (*P. L. 1902 p. 514 §§ 12, 13*) is plainly intended

to be a notice which shall apprise the defendant not only that he is sued but also of the nature of the suit, and such notice necessarily involves a disclosure of the *res* toward which the suit is directed. The statute (section 13) makes it the duty of the chancellor to prescribe the exact form and scope of the notice by rule of court, and in the discharge of this duty the chancellor has ordained that such notice shall state "the object of the suit and why the persons to whom it (*i. e.,* the notice) is addressed are made defendants." *Rule 58.* If the Colorado statute above referred to had consistently with the constitution of the state prescribed an action in which the plaintiff not only set forth his money claim against the defendant, but also described property of the defendant situate in the State of Colorado and within the jurisdiction of the court, and prayed not only for the establishment of the money claim against the defendant, but the application of the property described to the payment of such claim, it seems to me a plain instance would be presented of an action *quasi in rem.* It is plain that no notice to the defendant of such an action *quasi in rem* would be reasonable which did not distinctly disclose the *res* and its relation to the defendant, and to the demand of the plaintiff.

The origin of the jurisdiction of our courts in actions *quasi in rem* is to be found in the power of the sovereign state to exercise control over all objects to which that power can be directly applied. The state must control all property within its territorial limits. Parties interested in that property and residing within the state, or voluntarily coming into the state in order to have their rights in respect of the property in question enforced or protected, have a right to be heard in the courts of the state, and the utmost that can be demanded on the part of non-resident defendants is that they shall be fairly notified of the action so as to have an ample opportunity to appear and be heard therein. When these conditions exist the rights of all parties interested in the *res* are determined by *due* process of law.

Formerly, when a decree in equity for the specific performance of a contract to convey real estate was enforceable solely by the compulsive power of the court brought to bear upon the defendant so as to constrain him to make a conveyance in accord-

ance with his contract and the decree of the court, the action in which such a decree was obtained was strictly an action *in personam*. *Spurr* v. *Scoville, 3 Cush. 578.* As stated by Mr. Justice Gray, in *Hart* v. *Sansom, 110 U. S. 151:* "Upon a bill for the removal of a cloud upon the title as upon a bill for the specific performance of an agreement to convey the decree, unless otherwise expressly provided by statute, is clearly not a judgment *in rem* establishing a title in land, but operates *in personam* only by restraining the defendant from asserting his claim and directing him to deliver up his deed to be canceled, or to execute a release to the plaintiff."

When, however, the state, through its legislature, imparts an equality to the decree in equity in the classes of cases above mentioned, so as to make such decree operate directly upon the *res* so as to make the decree establish the rights of the parties litigant in respect to the *res,* irrespective of any compulsory action by the parties themselves or any of them, the whole character of the action at once is changed, and what was under the former course of procedure an action strictly *in personam* becomes an action *quasi in rem. Arndt* v. *Griggs, 134 U. S. 316.*

In the present case the *res* is personal property. It does not follow that because anciently an equity decree affecting real estate operated only *in personam,* and did not, *proprio vigore,* transfer or establish title, that such decrees affecting personal property within the jurisdiction of the court were in the same way limited in their practical operation. Assuming that formerly in neither case did the decree establish title but only the right of the complainant to receive a title, the important distinction still remains that, in the case of real estate title did not pass upon delivery of possession, whereas in the case of chattel property it did. Anciently the court of chancery would not give to a successful complainant in a suit for the specific performance of a contract to convey real estate, a writ of assistance to put him in possession, because no legal title would be thereby established. The same difficulty does not exist in the case of chattels. The argument to sustain the plea in this case seems to assume that a party complainant, who has obtained a final decree in this court establishing his equitable title to chattels in pos-

session of a defendant holding legal title thereto, and who in pursuance of such decree has actually obtained possession, has no legal title and will have none until the defendant has voluntarily or under the compulsion of the court executed a conveyance. The general principle, I think, is now recognized that a bare legal title to chattels ceases to exist when the holder of a complete equitable title takes possession, for the reason that such possession creates a legal title. *Kronson* v. *Lipschitz, 68 N. J. Eq. (2 Robb.) 367 (1904).* Such certainly must be the effect of the union of a complete equitable title and possession when the only right or duty in respect of the chattels remaining in the original holder of the legal title is to convey the same to the holder of the equitable title. Possession of a chattel under a complete equitable title in such a case must make a complete legal title.

We are not, however, at the present day in a case like this, confined to the consideration of those principles of equity jurisprudence and equity procedure and practice which were recognized a hundred years ago. Mr. Paterson's famous Chancery act of 1799 contained a number of provisions which, I think, bear very directly upon the subject under discussion. Section 47 provided that a decree of the court of chancery "for a conveyance, release or acquittance," after the allotted time for compliance had passed, should be considered "in all courts of law and equity to have the same operation and effect, and be as available as if the conveyance, release or acquittance had been executed conformably to such decree." *Pat. L. p. 433.* There seems to be nothing in this language, especially when considered in the light of the section of the statute next to be cited, which limits the conveyance, &c., to instruments affecting real estate only. This original statute, apparently extending to all classes of property, came down through the revision of 1846 unaffected. *Rev. Stat. p. 914 § 56.* In 1852, in a supplement to the Chancery act of 1799, a provision was inserted making a decree of the court of chancery for a conveyance, release or acquittance "of lands or any interest therein" directly and immediately effective to pass title, notwithstanding the disability of any party to the suit whose estate was so transferred "arising from

infancy, lunacy, coverture or otherwise." *P. L. 1852 p. 257 § 6.*
Section 47 of Paterson's law, however, remained entirely un-
affected by this new law which merely provided for a wider ef-
fect of a decree in the case of real estate than the effect of a
decree relating to personal property. The revisers who drafted
the Chancery act of 1874, possibly deeming that they were
only expressing what had theretofore been implied, consoli-
dated to a certain extent the two laws above mentioned, and
left their unified and revised section applicable to real property
only. *Rev. Stat. p. 115 § 63.* The section as drafted in 1874 is
now found in section 45 of the revised Chancery act of 1902.
*P. L. 1902 p. 525.* Conceding that the argument on behalf of
the complainant cannot be strengthened by any reference to the
existing law defining the effect of a chancery decree directing a
"conveyance, release or acquittance," nevertheless there are
other provisions in the act of 1799, and an early supplement
thereto, which remain to-day unrepealed, which, I think, greatly
strengthen the force and effect of a chancery decree relating to
personal property and undertaking to establish title thereto
when the *situs* of the property is within the jurisdiction of the
court.

Section 46 provides that the "decree of the court of chancery
shall * * * have the force, operation and effect of a judg-
ment at law in the supreme court of this state." This mandate
is now found unchanged in section 44 of the revised Chancery
act of 1902. *P. L. 1902 p. 524.* The *dictum* of Chief-Justice
Hornblower in deciding the case of *Van Buskirk* v. *Mulock, 18
N. J. Law (3 Harr.) 184 (1840),* which would greatly limit
the meaning and effect of this statutory provision, may certainly,
at the present day be disregarded, the decision itself having been
overruled. *Bullock* v. *Bullock, 57 N. J. Law (28 Vr.) 508
(Court of Errors and Appeals, 1895)*; *Mutual Life Insurance
Co.* v. *Newton, 50 N. J. Law (21 Vr.) 571, 575 (1888).*

In the supplement to Mr. Paterson's Chancery act, passed in
1820, it was provided that when the complainant obtained a
decree the court of chancery should have power, among other
things,

"to cause by injunction the possession of the effects and estate demanded by the bill, and whereof the possession or a sale is decreed, to be delivered to the complainant or otherwise, according to such decree, and as the nature of the case may require." *Rev. L. 1821 p. 705 § 7.*

This language is repeated in our present Chancery act. *P. L. 1902 p. 526 § 46.*

Whatever may have been the exact doctrine prior to these statutes, it seems to me that ever since these acts were passed a decree of the court of chancery of New Jersey establishing a complete equitable title to personal property, coupled with actual possession by the equitable owner, constitutes a legal title which must be recognized as such in courts of law as well as in courts of equity. It may be admitted that the complete equitable title referred to does not include cases where the holder of the legal title has any interest or has any duty as trustee or otherwise to perform with respect to the property in question othan than the duty to convey the same to the equitable owner.

The question now arises whether a decree of the court of chancery of New Jersey, establishing a complete equitable title to personal property, can be enforced by the court in any other way than by compelling action on the part of the defendant in the way of delivering up possession. I shall not discuss this question at length, because it is no longer an open one in New Jersey, while the two recent decisions of this court above cited remain in full force. A careful examination of the ancient rules of equity applicable to the case, with the aid of the statutory provisions above set forth, in my opinion, leaves no ground for the proposition that the court of chancery of this state, having pronounced a decree establishing title to personal property within its jurisdiction, and in the custody of a party to the suit, can only give possession of the property to the party who is entitled to it under the decree by compulsive force exerted upon the custodian constraining him to deliver up possession. The court may appoint a receiver, and such receiver will have a right to possession, and may take possession, and the custodian, after being enjoined from preventing the receiver from taking possession, may be removed as an obstructive force and be placed in jail.

But without pursuing this subject further, it may be pointed out that prior to the Chancery act of 1799 the fundamental weakness of a decree of the court of chancery in suits to obtain title to real estate, such as suits for specific performance of a contract to convey real estate, did not arise out of any essential incapacity of the court to obtain possession of the *res* or to give possession of the *res* to the party entitled thereto under the decree. The fundamental weakness of the decree consisted in the fact that possession of the *res* gave no legal title under the technical rules of law governing the transfer of freehold estates in land. Possession, which was so potent for the transfer of title to personal property, has had no effect to transfer a freehold title to real estate since the days of livery of seizin.

It is undoubtedly true that an action strictly *in personam* may be brought in the court of chancery of New Jersey for the recovery of corporate stock, the *situs* of which is in New Jersey. In the *Guayaquil, &c., Railway Company Case,* if the complainant in the cross-bill had commenced an original suit against the resident of the State of New York who claimed to own the stock of the Guayaquil, &c., Railway Company in dispute, without making the last-mentioned company a party to the suit, it seems to me that the action would have been strictly *in personam.* The decree in such case, even if the defendant had appeared in the suit, would have had no direct effect upon the possession of the *res,* nor do I see that proceedings upon the decree could have been conducted which would have had the effect to give the successful complainant possession of the *res.* The decree could only have been enforced by compelling the defendant, by stress of imprisonment, to execute a transfer or otherwise deliver the shares in dispute to the complainant in conformity with the decree. The New Jersey corporation would have been left free to act in relation to the disputed shares of its stock as it might see fit. It is unnecessary to discuss the effect of the decree in a new suit brought by the complainant against the custodian, the Guayaquil, &c., Railway Company. The point to be observed is that a decree in an action against the non-resident stockholder as sole defendant could not operate directly upon the *res* and be made to control and dispose of the *res* without regard to any

action on the part of the sole defendant which the decree might direct to be taken.

In supporting the proposition that the present suit is strictly a suit *in personam* the brief for the defendant alleges "that the object of the suit is to obtain relief which could only be decreed *in personam*," and points out that "the prayer is specifically limited to a decree directing the defendant to transfer the shares of stock in question," and that "the operation of the decree would be purely against the person of the defendant." In support of these views it is alleged that "the case differs from those in which decrees are sought to compel the conveyance of lands," in which cases by statute the "decree, if not complied with by the defendant, can operate itself as a conveyance," and it is insisted that "no similar provision is made for the transfer of property purely personal" such as the shares of stock in question.

This argument seems to rest upon a mistaken view of the nature of the case set forth in the complainant's bill, and of the relief therein prayed for, as well as an inadequate view of the power of the court of chancery to enforce its decree affecting personal property which it can seize and control. The allegations of the bill show that the stock in litigation is charged with a trust for the complainant's benefit; that the complainant is the equitable owner of this stock, and that the defendant as executor, &c., has no estate or interest therein excepting so far as the same stands as security for the sum of $40,000. The prayer of the bill is that the rights under the trust above mentioned may be established by the decree of the court as well as that the defendant may be decreed to assign and transfer the said shares of stock to the complainant upon payment of the said sum of $40,000 with the interest thereon.

Of course, it must be conceded that in any action to recover stock, if the relief prayed for includes the surrender of a certificate, or the execution of an assignment or power of attorney, such relief can only be obtained by compelling the defendant to act, and if such relief is the whole relief prayed for, the action, as we have seen, may be strictly *in personam*. In the present case, while the bill prays that the defendant may be decreed to assign and transfer the shares of stock in dispute, the main

14

relief prayed for is the establishment of the complainant's equitable title. The jurisdiction of the court is sustained by the existence of a trust—a trust in respect of a *res* situate within the jurisdiction of the court and in the custody of a party to the suit. If the complainant shall obtain a decree in this case establishing its right in respect of the *res,* and then shall desire to secure the surrender of the outstanding certificates representing the *res,* it may be obliged to bring a suit in the State of Pennsylvania in order to secure such surrender. A similar situation would exist if the defendant were a natural person resident in New Jersey, who had been duly served with process in New Jersey, but who had gone out of the state carrying with him the certificates representing the stock which was the subject-matter of the litigation. In such a case, however, the decree would be enforceable *in personam* whenever the defendant could be seized within the State of New Jersey.

The last matter to be considered is whether it is necessary, where the *res* is personal property, to have the *res* actually placed within the custody of the court through the instrumentality of a receiver, in order to give to the action the quality of an action *quasi in rem.* I can find no warrant in reason, and none in the authorities, disregarding a few *dicta,* which make the actual seizure of the *res* by an officer of the court essential to the status of the action as one *quasi in rem.* The fundamental essential, of course, must be that the personal property, which is the *res,* is so situated within the state that it may be seized. In other words, the *res* must be within the control of the state. If the state provides for an action affecting the *res,* but the court in which the action is brought has no power to directly control the *res,* and can only control the *res* by compulsory action on the part of the defendant, then we have an instance where the state has full power to provide for an action *quasi in rem,* but has seen fit not to do so—has seen fit to provide only an action strictly *in personam.* It is not the actual seizure of the *res* which is the essential element of an action *quasi in rem,* but the power to seize the *res* and to seize it in the action. If the *res* is within the jurisdiction of the court, it may be entirely unnecessary to take possession of it through a receiver in order to secure its

presence when the decree of the court is to be enforced. An injunction restraining the custodian of the *res,* who is a party defendant, may be amply sufficient to secure the desired result. Neither a receiver nor an injunction may be necessary to preserve the *res* within the control of the court. So long as the *res* is situate within the jurisdiction of the court, and the custodian of the *res* is made a party to the suit, the requirement of an action *quasi in rem* under consideration seems to me to be complied with. The mere fact that the failure of some party to the action to move for an injunction, or for the appointment of a receiver, may, in fact, result in the disappearance of the *res* pending the suit, and its absence from the state, when the final decree *passes,* cannot; in my judgment, affect the essential character of the action at the time when it was commenced, if at that time the *res* was within the state and within the control of the court. The actual seizure of chattels which constitute the *res,* and the custody thereof in a receiver appointed by the court, cannot exclude the possibility that the *res* may be removed from the jurisdiction of the court while the action is pending. It is, however, unnecessary to consider several questions which are suggested in regard to the effect of the removal of the *res* prior to the final decree in an action which is plainly, at the time of its institution, an action *quasi in rem.* In considering the essential nature of an action *quasi in rem,* both at the time of its institution and at the time of the final decree, there is a plain distinction between the mere possibility that, pending the action, the *res* may be removed from the jurisdiction of the court, and the actual removal of the *res.*

I think it follows from the principles enunciated in a number of recent federal cases, and in the New Jersey cases above cited, that an action like the present one, brought by the complainant to establish a trust in shares of stock in a New Jersey corporation, is an action *quasi in rem,* provided the corporation, the stock of which is in litigation, is made a party to the suit, and is lawfully subjected to the jurisdiction of the court in which the suit is brought by service of process within the state or by voluntary appearance. *Arndt* v. *Griggs, supra; Jellenik* v. *Huron Copper Mining Co., 177 U. S. 1; 44 L. Ed. 647; Roller*

v. *Holly, 176 U. S. 398; 44 L. Ed. 520; Citizens Savings and Trust Co.* v. *Illinois Central Railway Co., 205 U. S. 46; 51 L. Ed. 703.*

All parties, whether resident in New Jersey or residing in other states, may be lawfully brought into the suit by serving process upon the New Jersey residents, and giving the reasonable notice provided by law to the defendants residing in other states. I discover no basis for the proposition that the whole fabric of the action *quasi in rem* falls to the ground unless the court of chancery, through a receiver, attempts in some way to take possession of the *res* and actually obtains such possession.

The question remains whether, when the custodian of the *res,* the New Jersey corporation, whose stock constitutes the *res,* comes into court as a party complainant, the case is essentially different from that which is presented where the custodian is made a party defendant. In each case the *res* is subjected to the power of the court, in the one case by the control over the *res,* which the court acquires when the custodian of the *res* is brought into court by service of process, and in the other by the voluntary action of the complainant in coming into court and presenting to the court for adjudication his claims in respect of the *res.* No doubt the court, at the instance of the defendant, may preserve the *res* to meet the decree of the court by an injunction or by a receiver.

If, however, in cases like the *Guayaquil, &c., Railway Company Case* and the *Singer Manufacturing Company Case,* a prayer for a receiver or the appointment of a receiver, or the actual placing of the *res* in the custody of a receiver, is necessary to give the action the status of an action *quasi in rem,* I do not think that it would necessarily follow that such receivership proceedings would be necessary to constitute the present action one *quasi in rem.* If the decree in this case is in favor of the complainant no action on the part of any receiver is necessary. The situation of the *res* is not disturbed. The complainant stands with its equitable rights to the *res* established by the decree, and it remains in possession of such *res.* If, on the other hand, the decree is in favor of the defendant, no action on the part of any receiver can do the defendant any good. Presumably the de-

fendant holds some certificates which have already been issued representing the stock in dispute. The decree will merely adjudge the complainant's claim void and establish the title of the defendant. Assuming that there are certificates representing the *res* in possession of the defendant in the State of Pennsylvania, it is somewhat difficult to see precisely what a receiver could take into his possession. In the *Singer Company Case* the stock in litigation was stock of a New Jersey corporation which was made a party to the suit and was practically the custodian of the *res.* This corporation was enjoined from transferring the stock, and receivers were appointed according to the report "to whose charge and custody" the court "committed the shares in question." What was actually done by the receivers in the way of getting possession of stock in a corporation, the certificates of which had been lawfully issued, and were in the possession of a party beyond the jurisdiction of the court, does not appear.

My conclusion is that the present action has all the essential characteristics of an action *quasi in rem,* and that the defendant having been duly notified of the suit so as to give it an ample opportunity to appear and make defence therein, will, if it refrains from appearing, be bound by the decree so far as the same relates to the status of the *res,* and that in such case the defendant cannot maintain that it is deprived of property without due process of law. This conclusion is not affected by the admission that, if the defendant were a natural person and should come within the jurisdiction of the court after the decree had been passed, the court would have no power, by process of contempt or otherwise, to enforce the decree so far as such decree might undertake to constrain the defendant to deliver certificates of stock, execute assignments or powers of attorney or pursue any other course of conduct relating to the *res* which the decree might undertake to prescribe.

An order will be advised overruling the plea.