THOMAS A. PERRY *et al v.* FRANK YOUNG *et al.*

(*Nashville.*   December Term, 1915.)

1.  **JUDGMENT.**   **Personal judgments.**   **Character of notice.**

No personal judgment can be rendered against a nonresident
served with notice only by publication.   (*Post, pp.* 525-546.)

Cases cited and approved:   Wilcox v. Morrison, 77 Tenn., 700;
Arndt v. Griggs, 134 U. S., 316;  Jellenik v. Huron Copper Min-
ing Co., 177 U. S., 1;  Roller v. Holly, 176, U. S., 398;  Citizens'
Savings & Trust Co. v. Ill. Central R. R. Co., 205 U. S., 46;
Bryan v. Kennett, 113 U. S., 179;  Huling v. Kaw Valley R.
& Improvement Co., 130 U. S., 559;  Selig v. Hamilton, 234 U. S.,
652;  Cooper v. Reynolds, 10 Wall., 308;  St. Clare v. Cox, 106
U. S., 350;  Freeman v. Alderson, 119 U. S., 185;  Swift & Co. v.
Warehouse Co., 128 Tenn., 82-100.

Cases cited and distinguished:   Amparo Mining Co. v. Fidelity
Trust Co., 74 N. J. Eq., 197;  Goodman v. Niblack, 102 U. S.,
556;  Pennoyer v. Neff, 95 U. S., 714.

Code cited and construed:   Secs. 6115, 6121, 6162 (S.).

2.  **EQUITY.**   **Jurisdiction.**   **Actions "quasi in rem."**

The insured in a life policy who had assigned it to his mother,
who thereafter died, sued to reform the policy to conform
with the assignment agreement between himself and his mother,
that on his mother's death the policy should revert to him.
The insurance company appeared by the insurance commis-
sioner.   Other resident defendants were personally served.
Nonresident distributees of the assignee were served by pub-
lication in a collateral attachment proceeding against their dis-
tributive shares in the policy.   Defendant insurance company
demurred to the jurisdiction, alleging that the court had no
jurisdiction of the nonresident distributees.   *Held* that, since
the suit was to settle the interests of only those made parties,
it was *quasi in rem*, so that the court, having jurisdiction of

Perry v. Young.

the *res*, or the policy, had jurisdiction of the whole cause and could by its judgment bind the nonresident distributees.  (*Post, pp.* 525-546.)

FROM DAVIDSON

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—JAS. B. NEWMAN, Chancellor.

JEFF McCARN and PENDLETON & DEWITT, for plaintiffs.

W. L. GRANBERY and H. E. PALMER, JR.. for defendants.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill in this case was filed in the chancery court at Nashville on the 25th of September, 1913, by Thomas A. Perry, and his sister Minnie L. Perry, and his sister Betsie Bostick and her husband, W. E. Bostick, against Frank Young and his wife, Mattie Young, and the Mutual Benefit Life Insurance Company of New Jersey.

The bill alleged, in substance, that complainant. Thomas A. Perry, some time before the occurrence complained of, had caused to be issued to him a policy of life insurance in the sum of $2,000 on his life, payable to himself; that he had assigned this policy to

his mother; that the purpose and understanding be-
tween him and his mother was that this assignment
should be so worded as that the policy should belong
to him in case she died before his death; that by over-
sight this latter provision was left out; that he had
sought recently to borrow money from the insurance
company on this policy, but it declined to lend unless
all of the distributees of his mother should consent to
it; that he endeavored to get the defendants Frank
Young and wife to agree, as required by the insurance
company, but they declined to do so. The bill alleges,
in effect, that the complainants and the defendants
represent all of the distributees of the deceased
mother. The purpose of the bill is to have the policy
reformed so as to conform to the original agreement
for the assignment made between the complainant
Thomas and his mother. The bill charged that the
present interest of Mrs. Young, the granddaughter of
complainant's deceased mother, would only be $100,
and asked and obtained an attachment, and caused the
same to be levied on that interest. A publication was
ordered and made for the said Frank Young and wife
which indicated the matter in controversy, that is,
the policy of insurance, giving its number and the name
of the company that issued it, so that the notice showed
the matter about which the litigation was projected.
The insurance company accepted service of the bill
through its accredited agent, the insurance commis-
sioner. This company then filed a demurrer making
the point that the court had not acquired jurisdiction

of Young and wife, and therefore its decree would not protect the insurance company; the point being this: That those parties could not be made defendants by publication, but that personal service would be required to bind their interest. The bill shows that they are residents of Texas, and, of course, personal service is impossible. They have not entered their appearance, but as to them the bill stands on the order of publication and the publication thereof.

The chancellor sustained the demurrer filed by the insurance company. On appeal to the court of civil appeals that court overruled the chancellor. The case was then brought to this court on the writ of *certiorari,* and the ground of demurrer before mentioned urged in the chancery court and in the court of civil appeals is urged again here.

We think the court of civil appeals reached the right conclusion. No personal judgment is sought against Young and wife, and none could be rendered against them on publication. The court, however, has before it the insurance company that issued the policy, the complainants Thomas and his two sisters, who represent three of the four distributees of the deceased assignee, and Mrs. Young, the fourth distributee. The court also has within its control the policy of insurance which is the legal evidence of the claim against the insurance company, and the assignment on the back of it, and has the *res* itself, the claim against the insurance company through having the latter company before it. The policy is not actually exhibited

with the bill, but it appears from the allegations of the latter that the property is in the possession of the complainant Thomas A. Perry, and he has submitted himself to the jurisdiction of the court, and it is within its power at any moment to order the actual filing of the policy in the cause.

The court, thus having control of the *res*, can settle the *status* and rights of the parties with respect to the insurance policy, although one of the persons interested therein, under the assignment as it now stands, is a nonresident, and made a defendant only by publication. Our statute (Shan. Code, sec. 6115) provides that suit may be instituted wherever any material defendant is found, unless otherwise provided by law. The insurance company in the present case was a material defendant found in Davidson county. Section 6121, subsec. 4, as to bills against nonresidents, provides that they may be filed in the district or county in which the cause of action arose or the act on which the suit is predicated was to be performed, or in which the subject of the suit or any material part thereof is. Subsection 5 provides that, whenever attachment of property is allowed in lieu of personal service of process, the bill may be filed in the county or district in which the property, or any material part thereof sought to be attached is found at the commencement of the suit. Section 6162 declares that personal service of process on a defendant in a court of chancery is dispensed with when such defendant is a nonresident of the State. The following sections direct how

the fact of nonresidence is to be made known, and the order of publication made, .and how long the order shall be published, what it shall contain, etc.    No question is made on these technical matters.

The present case belongs to the class of *quasi* proceedings *in rem*.  Such proceedings are sufficiently described in 23 Cyc. 1410, by the author of Black on Judgments, in the following language:

"Judgments dealing with the *status,* ownership, or liability of particular property, but which are intended to operate on these questions only as between the particular parties to the proceeding, and not to ascertain or cut off the rights or interests of all possible claimants, are so far *in rem* that jurisdiction may be acquired by the seizure or control of the court over the *res,* together with reasonable constructive notice to parties defendant, but, unlike judgments strictly *in rem,* they are binding only upon the parties joined in the action, and thus notified, and have no effect upon the rights or liabilities of strangers."

One case in our Reports bearing a pretty close analogy to the present one is that of *Wilcox* v. *Morrison,* 9 Lea (77 Tenn.), 700.  In that case it appeared that Wilcox had executed a trust deed in the State of Virginia conveying real and personal property in that State, and also including therein a judgment which he had in Hawkins county, Tennessee, on one Netherland. After litigation had progressed for considerable time in Virginia, Wilcox came to Tennessee and filed his bill against Netherland, a resident of Tennessee, who

was the debtor in the judgment, and also certain of his creditors who resided in Virginia, and the trustee under the Virginia mortgage who likewise resided there. The bill charged that the debts had been practically settled in Virginia, and that the Tennessee judgment belonged to the complainant Wilcox. The trustee and one of the creditors, residents of Virginia, demurred because the trustee and effects were in Virginia, and the cause was being administered in that state. The demurrer was overruled. Here the court had control of the *res,* the judgment, by having before it the plaintiff in the judgment, and also the defendant, and proceeded to settle the rights of the parties thereunder. It seems from the report of the case that the parties subsequently answered the bill, and so submitted themselves to the jurisdiction, but the overruling of the demurrer indicated the view the court had as to its right to settle the *status* of the parties with respect to the judgment, even against nonresidents.

The case of *Amparo Mining Co.* v. *Fidelity Trust Co.,* 74 N. J. Eq., 197, 71 Atl., 605, is nearer in point. There it appears that a bill was filed in the chancery court of New Jersey by the complainant corporation against the defendant corporation, the latter a resident of Pennsylvania, for the purpose of having declared the ownership of the complainant as against the defendant of certain treasury stock in the complainant company. It appears from the report of the case that some of the certificates were in Pennsylvania, but the complainant company, which had issued the shares, resided in New

Jersey.   The court held that, the *res* being thus situated in New Jersey, it had control thereof, and could settle the rights of the respective parties in respect. thereto, although the defendant was a nonresident, and had notice only by publication and other substitutionary process directed by the court.   It was held that the court, having control of the complainant whose treasury stock was in controversy, had control of the stock or *res,* since it could order the same into actual custody at any time.   The court said:

"In the case at bar no receivership is prayed for, and no party having the custody of the *res* is brought in as a defendant in order to subject the *res* to the control of the court.   The situation seems to be analogous to one where a complainant in New Jersey, holding the possession of chattels, filed a bill in this court to obtain equitable relief against a defendant not resident in New Jersey in respect to such chattels.   .   .   .   The authorities which control this court indicate, I think, the following as the essential elements of an action *quasi in rem*:   (1) A *res* located within the territorial limits of the State in such a way that the State can, if it see fit to do so, exercise absolute power to control and dispose of it.   (2) A course of judicial procedure, the object and result of which are to subject the *res* to the power of the State, directly by the judgment or decree which is entered as distinguished from a course of procedure which only affects or disposes of the *res* by compelling a party to the action to con-

133 Tenn. 34

trol or dispose of the *res* in accordance with the mandate of the judgment or decree. (3) A course of judicial procedure on its face directed specifically toward the *res* so as to disclose this *res* to the defendant when reasonably notified of the action.''

Further the court said:

''The origin of the jurisdiction of our courts in actions *quasi in rem* is to be found in the power of the sovereign State to exercise control over all objects to which that power can be directly applied. The State must control all property within its territorial limits. Parties interested in that property and residing within the State, or voluntarily coming into the State in order to have their rights in respect of the property in question enforced or protected, have a right to be heard in the courts of the State, and the utmost that can be demanded on the part of nonresident defendants is that they shall be fairly notified of the action so as to have an ample opportunity to appear and be heard therein. When these conditions exist, the rights of all parties interested in the *res* are determined by due process of law. . . . Of course, it must be conceded that in any action to recover stock, if the relief prayed for includes the surrender of a certificate, or the execution of an assignment or power of attorney, such relief can only be obtained by compelling the defendant to act, and, if such relief is the whole relief prayed for, the action, as we have seen, may be strictly *in personam*. In the present case, while the bill prays that the defendant may be decreed to

assign and transfer the shares of stock in dispute, the main relief prayed for is the establishment of the complainant's equitable title. · The jurisdiction of the court is sustained by the existence of a trust—a trust in respect of a *res* situate within the jurisdiction of the court and in the custody of a party to the suit. If the complainant shall obtain a decree in this case establishing its right in respect of the *res,* and then shall desire to secure the surrender of the outstanding certificates representing the *res,* it may be obliged to bring a suit in the State of Pennsylvania in order to secure such surrender.  .  .  .    The last matter to be considered is whether it is necessary, where the *res* is personal property, to have the *res* actually placed within the custody of the court through the instrumentality of a receiver, in order to give to the action the quality of an action *quasi in rem.* I can find no warrant in reason, and none·in the authorities, disregarding a few *dicta,* which makes the actual seizure of the *res* by an officer of the court essential to the *status* of the action as one *quasi in rem.* The fundamental essential, of course, must be that the personal property, which is the *res,* is so situated within the State that it may be seized; in other words, the *res* must be within the control of the State.  .  .  .    It is not the actual seizure of the *res* which is the essential element of an action *quasi in rem,* but the power to seize the *res* and to seize it in the action. If the *res* is within the jurisdiction of the court, it may be entirely unnecessary to take possession of it through a

receiver in order to secure its presence when the decree of the court is to be enforced. . . . So long as the *res* is situate within the jurisdiction of the court, and the custodian of the *res* is made a party to the suit, the requirements of an action *quasi in rem* under consideration seems to me to be complied with.
. . . I think it follows from the principles enunciated in a number of recent federal cases, and in the New Jersey cases above cited, that an action like the present one, brought by the complainant to establish a trust in shares of stock in a New Jersey corporation, is an action *quasi in rem,* provided the corporation the stock of which is in litigation is made a party to the suit, and is lawfully subjected to the jurisdiction of the court in which the suit is brought by service of process within the State or by voluntary appearance"
—citing *Arndt* v. *Griggs,* 134 U. S., 316, 10 Sup. Ct., 557, 33 L. Ed., 918; *Jellenik* v. *Huron Copper Mining Co.,* 177 U. S., 1, 20 Sup. Ct., 559, 44 L. Ed., 647; *Roller* v. *Holly,* 176 U. S., 398, 20 Sup. Ct., 410, 44 L. Ed., 520; *Citizens' Savings & Trust Co.* v. *Ill. Central R. R. Co.,* 205 U. S., 46, 27 Sup. Ct., 425, 51 L. Ed., 703.

"All parties, whether resident in New Jersey or residing in other States, may be lawfully brought into the suit by serving process upon the New Jersey residents, and giving the reasonable notice provided by law to the defendants residing in other States. I discover no basis for the proposition that the whole fabric of the action *quasi in rem* falls to the ground unless the court of chancery, through a receiver, at-

tempts in some way to take possession of the *res* and actually obtains such possession. The question remains whether, when the custodian of the *res,* the New Jersey corporation, whose stock constitutes the *res,* comes into court as a party complainant, the case is essentially different from that which is presented where the custodian is made a party defendant. In each case the *res* is subjected to the power of the court, in the one case by the control over the *res,* which the court acquires when the custodian of the *res* is brought into court by service of process, and in the other by the voluntary action of complainant in coming into court and presenting to the court for adjudication his claims in respect of the *res.* No doubt, the court, at the instance of the defendant, may preserve the *res* to meet the decree of the court by an injunction or by a receiver.''

This method of deciding rights has been often recognized by the supreme court of the United States. In *Goodman* v. *Niblack,* 102 U. S., 556, 563, 26 L. Ed., 229, the court said:

''This is a proceeding in equity to enforce a lien on the fund which is within reach of the court, and, as the trustees and complainant have the requisite citizenship, section 738 of the Revised Statutes provides a remedy for inability to serve process by an order of publication. If they appear, the suit will proceed as usual. If they do not appear, the decree, so far as it affects the fund in the hands of Niblack, will bind them; and this is all that is necessary to give the court

jurisdiction to grant the relief prayed for by the complainant.''

In *Bryan* v. *Kennett*, 113 U. S., 179, 195, 199, 5 Sup. Ct., 407, 28 L. Ed., 908, the supreme court recognized the right of the court to pass title to land within jurisdiction of the court as against minors, although the latter had been made defendants only by publication. So it has been held that the land of one made defendant by publication only may be subjected to a condemnation proceedings for the benefit of a public improvement. *Huling* v. *Kaw Valley R. & Improvement Co.,* 130 U. S., 559, 9 Sup. Ct., 603, 32 L. Ed., 1045. It has also been held that a court having under its control a corporation for winding-up purposes may make an assessment on the stockholders pursuant to law for the payment of corporate debts, and that persons who are defendants only by publication will be bound by the assessment if they were, in fact, stockholders subject to the law under which the assessment was made, and that they would not be suffered in a collateral proceeding to question the propriety of the assessment itself, although such persons would be permitted to show in such collateral proceedings that they had transferred their stock and might litigate any matter bearing upon the extent or duration of their stockholding. *Selig* v. *Hamilton,* 234 U. S., 652, 34 Sup. Ct., 926, 58 L. Ed., 1518.

Under the foregoing authorities, and many others that might be cited, we are of the opinion that the defendants Young and wife are properly before the

court under the publication ordered and made, and that they will be bound by whatever decree may be finally made in the cause.

It is proper to say that we do not consider important the attachment that was issued and served on the supposed interest of Mrs. Young in the policy, inasmuch as the complainant asserted no debt against Young and wife, nor any right by which they could subject such interest to sale. The jurisdiction of the court over the *res* depends on other principles which have been fully stated. The publication, however, made under the attachment, served the useful purpose of not only notifying Young and wife of the existence of the suit, and of their duty to appear and defend, but also that the controversy was over a policy of insurance in the defendant company, stating the number of that policy. Thus on reading the notice they will be sufficiently informed of the necessity of appearing and defending any rights that they may wish to assert.

The result is that the decree of the court of civil appeals is affirmed and the cause is remanded to the chancery court for further proceedings.

MR. JUSTICE FANCHER delivered a dissenting opinion as follows:

I cannot give assent to the proposition that the Texas defendant can be brought before the court by publication in this case. The insurance company is a nonresident corporation. It is before the court by service of process upon its agent in this State by

virtue of a statute on the subject. The nonresident defendant has such right in the policy of insurance, or in the subject of litigation that it cannot be taken away from her unless the court can gain jurisdiction over her person.

The principle is well settled by all the courts in this country that no effective personal judgment can be rendered in one State against a nonresident defendant who is not personally served with process and does not appear. *Pennoyer* v. *Neff,* 95 U. S., 714, 24 L. Ed., 565; *Cooper* v. *Reynolds,* 10 Wall., 308, 19 L. Ed., 931; *St. Clare* v. *Cox,* 106 U. S., 350, 1 Sup. Ct., 354, 27 L. Ed., 222; *Freeman* v. *Alderson,* 119 U. S., 185, 7 Sup. Ct., 165, 30 L. Ed., 372. All the authorities upon the subject of substituted process against a nonresident defendant recognize the right to affect his property, and in this manner bring him before the court, but only to the extent of his property situated within the jurisdiction of the court. The right to summon a party from his distant place of abode and compel him to submit to an adjudication of matters in another State lies only in the right to seize and affect his property located in the State. The law goes no further than this, and this far only upon the presumption that it is supposed a party will look after his property, and, when that is seized by the law, he is bound to take notice.

The case of *Selig* v. *Hamilton,* 234 U. S., 658, 34 Sup. Ct., 926, 58 L. Ed., 1523, discussed in the opinion of the majority, does not violate the principle above

stated. That was a case affecting the right of a stockholder in a corporation and subjecting him to assessment for payment of debts and arose under the Minnesota statute upon that subject. The corporation was properly before the court, and, of course, all matters affecting the corporation as such, and its property, consequently its stockholders, to the extent of their stock, could be adjudicated. It was held that the statute provided reasonable regulations for enforcing liability assumed by those who became stockholders under the laws of Minnesota. The assessment as to the amount thereof against the stockholders, including the propriety and necessity for same, might be made effective against nonresident stockholders, as well as those who were resident, after proper notice by publication or otherwise, as directed by the court. And in fixing the amount of such *pro rata* liability of stockholders the court would consider the expenses of the receivership, the amount of corporate assets available, the parties liable as stockholders, the nature and extent of such liabilities, considering the probable solvency or insolvency of the stockholders, and expenses in levying the rate upon all the parties. It was expressly held that in determining these matters the judgment of the court was not in the nature of a personal judgment, but the stockholders were deemed to be represented by the corporation itself, which was before the court. This upon the principle of the obligation assumed by virtue of the relationship of the stockholders to it. However, in order to give the stock-

holder the right to make any personal defense, this
course of procedure did not preclude him from show-
ing he was not a stockholder, or not a holder of as
many shares as was alleged, or that he had a claim
against the corporation, or any other defense personal
to himself.  In bringing the corporation before the
court, the stockholders were necessarily before the
court, inasmuch as the several shares owned by the
stockholders compose the corporate body.  The right
to bring the stockholder before the court in the first
instance, however, is upon the logical basis that, being
a mere shareholder in the corporation, he was pre-
sumed to be represented by the general corporate
body, and he was before the court upon the same prin-
ciple that a nonresident may be brought before the
court in any other action to the extent that he has
property subject to seizure within the jurisdiction of
the court.

The New Jersey case of *Amparo Mining Company*
v. *Fidelity Trust Co.*, 74 N. J. Eq., 197, 71 Atl., 605,
cited in the majority opinion, likewise falls within the
same rule.  The court had the corporation before it,
the stock of which was owned in part by the nonresi-
dent corporation sought to be brought before the court
as a defendant.  It was held that the stock of the cor-
poration before the court could be ordered before it
at any time.  Manifestly this was true, since the stock
is but a share in the concern itself which was before
the court.  Having the corporation before the court,
it had the several shares within its control.  These

shares had been issued in the State of New Jersey, and the principal corporation was a resident of that State, and was before the court of the State of its residence.

I do not consider the case of *Wilcox* v. *Morrison,* 9 Lea, 700, as authority here. It seems clearly distinguishable to my mind. The judgment in Tennessee was against a resident of Tennessee. Wilcox, the judgment creditor, had transferred this judgment to a trustee in Virginia. Afterward Wilcox sought in equity to assert his rights to this Tennessee judgment on the ground that the Virginia debts had been settled, and it was held he could bring before the court the nonresident trustee to whom the judgment had been assigned. This was correct upon the principle that the nonresident trustee would have notice of matters concerning this judgment just as he would be presumed to look after property in Tennessee. His rights under the judgment could only be asserted here, and he was forced to take notice that the court of equity, having power to control this judgment, was asserting this power. It was very much as if he were a party to the judgment sought to be affected, because that judgment had been assigned to him by the plaintiff.

I do not regard the matters affecting this Texas defendant in the present case as coming within that large class of cases which are not strictly actions *in rem,* but are often spoken of as actions *quasi in rem.* These actions *quasi in rem* only seek to subject certain property of the owner to the discharge of the claim

asserted, such as attachment cases, actions for the enforcement of mortgages and other liens, and all other proceedings having for their sole object the sale or other disposition of the property of the defendant to satisfy the demands of the plaintiff. They differ, among other things, from actions which are strictly *in rem,* in that the interest of the defendant is alone sought to be affected so that citation to him is required, and the judgment therein is only conclusive between the parties.

The State has power over property within its limits owned by nonresidents, and it is by virtue of this ownership that tribunals can inquire into the nonresident's obligations to its citizens. The inquiry in such case can only proceed so far as may be necessary for the disposition of the property. If the nonresident possesses no property within the State, there is nothing upon which its tribunals can act. *Pennoyer* v. *Neff; Freeman* v. *Alderson,* supra.

Now in the present case, as I view it, the Texas defendant has no property within this State. She is not a stockholder of the insurance corporation. She has no such interest in the affairs of the corporation as that she will be presumed to take notice of anything respecting the court's action as to the liability of the insurance company.

It is said that the *res* is before the court in this case. To my mind, no *res* is here. The claim is not the *res.* The action is entirely personal. Suit upon the subject-matter of this litigation might be brought

in any State so far as the insurance company is concerned, where it might be served with process through its proper agents. The Texas defendant might bring her suit involving her rights in any court in any State having such jurisdiction. Furthermore, the property of the insurance company is not before the court, nor involved in the suit. Then upon what principle must she take notice of a suit against the corporation here in Tennessee? The policy of insurance is like a note. It is not property. It is only the evidence of the obligation. The obligation itself is like a thing in the air which may fly anywhere. The suit is to change or declare a liability of the insurance company personal in its nature. Can it be that a nonresident having an interest in that contract must take notice of the proceeding and appear because the insurance company is before the court? Suppose this action had been brought in any other of the many States where the insurance company, no doubt, does business and has agents; will Mrs. Young, the nonresident having an interest in the obligation of insurance, be forced to take cognizance and appear, upon mere constructive notice? We think not.

It was suggested in argument that under modern insurance the policy holder has a right to share in certain surplus arising from the earnings on money paid in by the policy holder as premiums in excess of the amount necessary to carry the actual risk. If this be so, it is still a personal relationship arising from the contract of insurance, the main feature of which

is the insurance, not as an investment or shareholder in the company, but to indemnify the holder against the loss. But, if the policy holder, under modern insurance, has certain rights in the earnings of the company, this suit is not to change or affect the *status* of policy holders in general upon the principle that they hold a position analogous to stockholders. In point of fact, such policy holders do not stand in such relationship that a suit against the company will authorize the court to deal with them upon the grounds held in *Amparo Mining Company* v. *Fidelity Trust Co.* and *Selig* v. *Hamilton*, supra, that, having the corporation before the court, the shares therein are subject to its orders. This is not a suit to change the relationship of the shareholders to the corporation. It is a suit entirely of a personal nature and involving the rights under one policy alone.

The publication has its office, but it does not give actual notice. The party sought to be brought before the court in reality is before the court by the publication, not alone, but in conjunction with the assertion by the court of control over the property or *res* within its jurisdiction.

Webster defined "due process of law" in his argument in the Dartmouth College Case as "a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." Within that fundamental right, how can it be said that a court proceeds to hear and give trial when no actual personal notice is given, and when no property of the

defendant is affected within the control of the court, which will afford presumptive notice?

The whole proposition reduces to the question of notice. I am unable to see how notice can be had as here attempted, within the rules governing the action of courts exercising power only within a given jurisdiction, within which the defendant does not come. I therefore respectfully dissent from the opinion of the majority on this question, believing the chancellor was correct sustaining the demurrer of the insurance company.

MR. JUSTICE BUCHANAN delivered a dissenting opinion as follows:

"Jurisdiction has been well defined to be a power constitutionally conferred upon a judge or magistrate to take cognizance of and determine causes according to law and to carry his sentence into execution." *Swift & Co.* v. *Warehouse Co.*, 128 Tenn. (1 Thomp.), 82-100, 158 S. W., 480; Cyc. vol. 11, p. 660. The primary question in the present case is whether such power was in the chancery court of Davidson county, in respect of the right of Mrs. Young which it was the purpose of the bill to have the court adjudicate by its decree. His honor the chancellor held that, under the facts disclosed by the bill, no such jurisdiction or power existed in his court, and, in my opinion, that holding was correct. The right sought to be affected by the decree was one which existed wholly under contracts referred to in the bill. The first of these was

a contract between complainant and the insurance company; the second a contract of assignment between complainant and his mother by which complainant made an assignment, absolute on its face, of all his rights under the insurance contract to his mother. The mother died, and, by operation of law, all her rights under the absolute assignment were cast upon her distributees; Mrs. Young being one of this class. The bill was filed for the purpose of reforming the contract between complainant and his mother in such manner as to wholly defeat the right of Mrs. Young and the other distributees, under the assignment and descent cast, as above stated.

Now the right of Mrs. Young, under the foregoing contracts, is wholly incorporeal in character. It is a right in property of the same character. Her right is one which inheres in her person. It is attached to no tangible property, and it is capable of being brought into judgment only by personal service of process upon her, affording notice to her that her right is in question, and opportunity to defend the same. It is not pretended that such service of process was had upon her. She was beyond the jurisdiction of the court when the bill was filed, and when the court sustained the demurrer to its jurisdiction. She was at the times aforesaid a resident of the State of Texas. If the case were different in its facts, as, for instance, if the bill had sought to subject, under the decree of the court, a right to real property within the local jurisdiction of the court, or a right to tangible

personal poperty located within the jurisdiction of the court, or other character of property so situated that the court assuming the jurisdiction would be in a position to protect the rights of parties, the court might well have assumed jurisdiction. In such classes of cases the court can lay its hand upon the property, and thereby draw into its jurisdiction the rights of parties attached to the particular property over which the court has assumed jurisdiction. But no such case is presented here. The property right of Mrs. Young is wholly intangible, and is attached to no property which by any proceeding in this cause has or can be brought within the local jurisdiction of the court. Her property right sought to be reached by the decree is inseparable from her person, except by her voluntary surrender of it with or without consideration, her death, or the judgment or decree of a court of competent jurisdiction founded on her voluntary appearance or process personally served upon her.

"The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others. And so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its territory, except so far as is allowed by comity, and that no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions. 'Any exertion of authority of this sort beyond this limit  .  .  .  is a mere nullity,

133 Tenn. 35

and incapable of binding such persons or property in any other tribunal.' '' *Pennoyer* v. *Neff*, 95 U. S., 714, 24 L. Ed., 565.

As I see this suit, it was not a proceeding *in rem*, nor even one *quasi in rem*, but was purely a personal action involving only personal and intangible property rights where the jurisdiction of the subject-matter of the suit could only be acquired by personal service of process upon the parties in interest. In *Pennoyer* v. *Neff*, supra, it was said:

"Jurisdiction is acquired in one of two modes: First, as against the person of the defendant by the service of process; or, secondly, by a procedure against the property of the defendant within the jurisdiction of the court. In the latter case the defendant is not personally bound by the judgment beyond the property in question, and it is immaterial whether the proceeding against the property be by an attachment or bill in chancery. It must be substantially a proceeding *in rem*."

On the grounds above stated, and those advanced in the dissenting opinion of Mr. Justice FANCHER, in which I concur, I respectfully dissent from the opinion of the majority of the court in this cause.