## Merritt B. Austin, Appellee, v. Royal League et al., on appeal of Royal League, Appellant.

### Gen. No. 28,462.

1. APPEAL AND ERROR—*waiver of assigned error by failure to argue.* Error assigned but not argued in the brief and argument will be treated as waived.

2. FRATERNAL BENEFICIARY ASSOCIATIONS—*equitable right of ineligible beneficiary to reimbursement for dues and assessments paid for member.* A beneficiary named in a fraternal certificate as a dependent of the member but who is ineligible because not a dependent and who has paid the member's dues and assessments for years is entitled in equity to be reimbursed the amount of such payments where the evidence shows that the society accepted the dues and assessments from him with full knowledge of the actual relationship of the parties and the nondependency of the beneficiary.

3. FRATERNAL BENEFICIARY ASSOCIATIONS—*right of ineligible beneficiary to sue in equity for reimbursement of dues and assessments.* A beneficiary named in a fraternal certificate who is ineligible under the rules of the society for want of dependency is entitled to sue in equity for the amount of dues and assessments paid by him for the member by suit against the society, which retains the fund, without first attempting to enforce his rights

against the heirs of the member, who, under the rules of the society, are entitled to the benefits in such case.

4. FRATERNAL BENEFICIARY ASSOCIATIONS—*when termination of certificate does not defeat right of beneficiary to reimbursement in equity.* The right of a beneficiary named in a fraternal certificate to reimburement in equity for dues and assessments paid by him for the member is not defeated as to payments made on a certificate which terminated by the member reaching a specified age, on the theory that the society having carried the risk during the contract period it was entitled to be fully paid therefor by such dues and assessments, where the member was ineligible for want of dependency on the member so that as to such beneficiary no risk was ever incurred or carried.

5. FRATERNAL BENEFICIARY ASSOCIATIONS—*reimbursement of ineligible beneficiary for local council dues paid by him.* An ineligible beneficiary who has paid the members dues and assessments on a benefit certificate is entitled in equity to reimbursement for an amount paid for local council dues although such amount was used to defray expenses of the local council.

6. FRATERNAL BENEFICIARY ASSOCIATIONS—*heirs as necessary parties in suit by ineligible beneficiary for reimbursement of dues and assessments.* In a suit in equity by an ineligible beneficiary against a fraternal benefit society for reimbursement of the amount of dues and assessments paid by him for the member, the member's heirs, who are entitled to receive the benefits under the rules of the society because of the beneficiary's ineligibility, are necessary parties defendant.

7. JUDGMENTS—*decree for reimbursement of beneficiary for dues and assessments not one in rem.* A decree in a suit by an ineligible beneficiary against a resident fraternal benefit society and nonresident heirs of the member who are entitled to the benefits because of the ineligibility of the beneficiary, to enforce his equitable lien against the benefit fund in the hands of the society for reimbursement for dues and assessments paid by him for the member, allowing him to recover the amount of his payments, is not strictly one *in rem* which is binding on the nonresident heirs upon whom substituted service only was had, since neither the nature of the property nor of the heirs' ownership thereof is such that they may be reasonably presumed to be apprised by the constructive seizure thereof in equity of the pendency of the proceeding.

8. JUDGMENTS—*decree for reimbursement of ineligible beneficiary for fraternal benefit assessments as one quasi in rem.* A decree in a suit by an ineligible beneficiary of a deceased member of a fraternal benefit society who had paid all the member's dues and assessments, allowing such beneficiary to recover the amount of his payments out of the benefit fund in the hands of the society,

is a decree *quasi in rem* which is binding on nonresident heirs who are made defendants and served with process by substituted service only, where the society is a resident corporation and the fund, the certificate, the society and complainant are all within the jurisdiction of the court and the decree does not attempt directly to adjudicate the rights of the heirs, who, under the rules of the society, are entitled to the benefits, especially where full notice by publication and by mailing notice was had the proceeding in such case being the equivalent of actual seizure.

9. JUDGMENTS—*fraternal benefit fund as property sufficient to sustain decree quasi in rem.* A fraternal benefit fund in the hands of the society which holds it for the nonresident heirs of the member who are entitled to receive it because of the ineligibility of the resident beneficiary named in the certificate is property which will support a decree adjudging the right of such beneficiary to reimbursement for dues and assessments paid by him for the member where the rights in such fund have become fixed and vested by the death of the member, even though such fund is not strictly tangible property susceptible of seizure as against such nonresident heirs without personal service upon them and actual seizure under process.

Appeal by defendant from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1923. Affirmed. Opinion filed March 10, 1924.

BUSBY, WEBER, MILLER & DONOVAN, for appellant.

VOSE & PAGE, for appellee; JOHN D. CLANCY and LEE W. CARRIER, of counsel.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an appeal by the defendant, the Royal League, from a decree of the circuit court of Cook county in a suit in equity brought by the complainant, Merritt B. Austin, to recover the dues and assessments paid by him on a benefit certificate in which he was named as the beneficiary and which was issued by the defendant to Arthur Brookover, his stepfather.

The principal facts are not in dispute. The com-

plainant was a resident of Cook county, Illinois. The defendant was a fraternal benefit association incorporated under the laws of Illinois, and had its principal office in the City of Chicago in Cook county. The complainant's father died before the complainant was born. When the complainant was about three years old his mother married Arthur Brookover. The complainant lived with his mother and his stepfather, Arthur Brookover, until the complainant was over twenty-eight years of age. While the complainant lived with his stepfather and his mother he was supported by his stepfather until he was of sufficient age to take care of himself. The complainant was his mother's only child. Arthur Brookover, the stepfather, had no children at the time of his marriage to the complainant's mother and no children were born of that marriage.

About the year 1888 the complainant and his stepfather, Arthur Brookover, became members of the defendant, the Royal League. At that time complainant was living with his stepfather and his mother. The complainant remained a member of the defendant, the Royal League, for about twenty-four years. He was a member of the Metropolitan Council. The complainant's stepfather, Arthur Brookover, was a member of the Calumet Council. At the time that Brookover became a member of the defendant, the Royal League, he named his wife, Sarah Brookover, as sole beneficiary in a benefit certificate for the sum of $4,000, bearing the number 2816. Sarah Brookover died in March, 1907. After her death Brookover surrendered the certificate in which his wife had been named as beneficiary. On the back of the certificate Brookover wrote the following indorsement to Charles E. Piper, the Supreme Scribe of the defendant, the Royal League: "I herewith surrender and return to the Supreme Council of the Royal League the within benefit certificate No. 2816 and direct that a new one

be issued to me payable to Merritt B. Austin, step-son." The indorsement was attested by P. F. Cohn, scribe. Piper wrote the following letter to Cohn: "We are holding up certificate of Brother Arthur Brookover for correction on his beneficiary. He names Merritt B. Austin, stepson. Unless the stepson is dependent upon him, we shall be unable to write this certificate under our present laws. He can use the word 'dependent' in lieu of 'stepson.'" The laws of the defendant, the Royal League, provide that the person named as beneficiary in a certificate as "dependent" must be dependent upon the member to whom the certificate is issued.

The complainant was not a dependent of his step-father, Arthur Brookover, and was not eligible as a beneficiary in his stepfather's certificate. Cohn wrote in his own handwriting on the letter of Piper the following notation: "I wish to designate my beneficiary Merritt B. Austin, my stepson (dependent)." Cohn sent the letter to Brookover, and Brookover signed the notation on the letter and returned the letter to Cohn. A new benefit certificate, bearing the date April 23, 1917, and the No. 63692, was issued to Brookover, and was payable to the complainant, Merritt B. Austin, described as "dependent."

On February 5, 1914, Brookover surrendered certificate No. 63962 and on February 7, 1914, received in lieu of that certificate a new certificate for the sum of $4,000, No. 95234, payable to the complainant, Merritt B. Austin, described as "dependent" and providing that it was to expire October 2, 1919. On that date Brookover would be seventy years of age. August 10, 1917, Brookover surrendered certificate No. 95234 and received in lieu of that certificate two new benefit certificates, Nos. 114805 and 114806, each for the sum of $2,000, each payable to the complainant, Merritt B. Austin, and each containing the indorsement "bearing relationship to said member of dependent."

Certificate No. 114806 expired October 2, 1919, at which time, as stated, Brookover would be seventy years of age. Certificate No. 114805 covered Brookover's entire life and was outstanding and in force at the time of Brookover's death. In 1907, shortly after the death of his wife, Brookover went to live with the complainant and lived with him continuously until late in 1912, when Brookover went to West Virginia to live. While Brookover was living in West Virginia he was supported by the complainant. From time to time Brookover visited the complainant. All the dues and assessments on the certificates were paid by Brookover until September, 1911. At this time Brookover became ill and was unable to work. The complainant supported him and paid all of the dues and assessments on Brookover's benefit certificates until Brookover's death. The dues and assessments were paid by checks of the complainant which were sent to the collector of the local council of the defendant, the Royal League, to which Brookover belonged.

On January 26, 1921, Brookover died intestate, leaving no property of any kind. He left twenty-six heirs. None of the heirs is a resident of Illinois. At the time of Brookover's death the complainant furnished satisfactory proofs of the death of Brookover to the defendant, the Royal League, and demanded payment of the $2,000 benefit of Brookover. The defendant, the Royal League, refused to make any payment on the ground that complainant was not dependent upon Brookover, and that, therefore, the defendant had no power to make such payment under its charter and by-laws. The laws of the defendant provided that where a person named as beneficiary in a benefit certificate was ineligible, the benefit fund was payable to the heirs at law of the member of the Royal League.

The complainant corresponded with officers of the defendant in regard to the cancellations and renewals of the certificates of Brookover. The complainant also had conversations with the officers in this respect

and in reference to the matter of rates. The complainant testified that he told Mrs. Frank J. Deming, who was treasurer of one of the councils of the defendant, that he had to pay the dues on Brookover's certificates, and did not want to pay any more than he had to. He also told Mrs. Deming the relationship that he bore to Brookover. The evidence shows correspondence between the complainant and Mrs. Deming in reference to Brookover's certificates.

We are of the opinion that the defendant knew that the complainant was the stepson of Brookover and was not dependent upon Brookover or supported by Brookover; and that the defendant accepted the dues and assessments paid by the complainant with full knowledge of those facts.

The specific prayer of the bill is as follows: ''That said Royal League be required by this court to account to your orator and upon such accounting to refund all moneys paid or caused to be paid by your orator from and after the first day of September, 1911, to the said Royal League upon any and all benefit certificates aforesaid on the life of said Arthur Brookover, together with interest thereon from the dates, respectively, of such payments.''

The chancellor found that the complainant had paid dues and assessments on the certificates of Brookover amounting to $1,165.62, and that this sum was apportioned as follows: Assessments applied on certificate No. 114805, $748.18; assessments applied on certificate No. 114806, which expired on October 2, 1919, $369.98; Local Council dues $47.46. The chancellor found in favor of the complainant and ordered and adjudged as follows:

''1.  That said defendant, Royal League, forthwith pay to the Clerk of this court the sum of Two Thousand Dollars ($2,000) together with interest thereon from January 26, 1921, at five per cent per annum, a total sum of $2202.94.

''2.  That said Clerk shall thereupon pay out of

said sum so in his hands to the Complainant, Merritt B. Austin, the sum of Fourteen Hundred Eighty-two and forty-six one-hundredths Dollars ($1482.46) as principal and interest aforesaid, and the further sum of thirty four and six one-hundredths Dollars ($34.06) as costs.

"3. That said Clerk shall thereupon pay out of said sum so in his hands the sum of Twenty-eight Dollars ($28.00) to said guardian *ad litem,* Howard Daniels.

"4.. That said Clerk of this Court shall hold the balance of said fund so paid to him by said defendant, Royal League, subject to the further order and direction of this Court."

The defendant, the Royal League, is the only party prosecuting this appeal.

The complainant assigned as a cross-error the refusal of the chancellor to find that the complainant was entitled to the full amount of the $2,000 benefit certificate of Brookover. The objection is not argued in the brief and argument for the complainant, and will, therefore, be treated as having been waived. The only question on the merits is whether the complainant is entitled to be reimbursed for the dues and assessments that he paid to the defendant. We are of the opinion that he is. In our opinion he has an equitable interest in the fund of the benefit certificate to the amount of the payments that he made, and should be reimbursed for those payments. The cause of action is clearly one that comes within the jurisdiction of a court of equity. *National Union v. Keefe,* 263 Ill. 453, 464; *Royal Arcanum v. McKnight,* 238 Ill. 349, 359; *Royal Arcanum v. Tracy,* 169 Ill. 123, 127; *Covenant Mut. Ben. Ass'n v. Sears,* 114 Ill. 108, 113.

Counsel for the defendant maintain that if the complainant "has any claim against any one" it "is against the heirs at law of Arthur Brookover and not against the Royal League." Whether the complainant could maintain a suit against the heirs at law is a question upon which we express no opinion.

Austin v. Royal League, 232 Ill. App. 359.

In the view we take of the case, even though it should be granted that the complainant has a right of action against the heirs at law, we do not think it would be his sole remedy. We are clearly of the opinion that he has the right to proceed primarily against the fund of the benefit certificate in the hands of the defendant. In the present status of the case, and as long as the fund remains in the possession of the defendant, we do not exactly understand what would be the nature of complainant's action against the heirs at law. He certainly is not compelled to wait until the defendant has paid the heirs, and then proceed against them.

It is further contended by counsel for the defendant that the complainant is not entitled to recover the $369.98 which was paid by the complainant as dues and assessments on the certificate which terminated when Brookover reached the age of seventy. It is argued by counsel for the defendant that since Brookover lived beyond the age of seventy and since the certificate in question, therefore, expired, the assessments which were paid to keep the certificate alive during the term of the liability under the certificate cannot be recovered.

Counsel for the defendant suggest that the situation is similar to the one where the owner of a house is insured against loss by fire for a certain period and the house does not burn within that time. In such a case counsel say that the premium paid could not be recovered because, although the house did not burn, the insurer is entitled to be paid for carrying the risk. The illustration is not analogous to the case at bar for the reason that so far as the complainant is concerned the defendant never carried any risk, since the complainant was ineligible under the laws of the defendant. The risk that was carried was for the benefit of the heirs at law, and as the $369.98 was paid by the complainant to keep that risk alive for the benefit of the heirs, the complainant is equitably entitled to

be reimbursed for the $369.98 out of the benefit certificate for $2,000, which is due and payable to the heirs, before any part of that amount is paid to the heirs. There would be no $2,000 benefit certificate if the complainant had not paid the necessary dues and assessments.

Counsel for the defendant contend that the item of $47.46 for local council dues should not be recovered by the complainant because those dues were used to defray the expenses of the council. It is immaterial in our opinion what the dues were used for so far as the complainant's right to be reimbursed is concerned:

The principal question in the case, and the one on which counsel for the defendant mainly rely for reversal, is that the court did not acquire jurisdiction of those defendants who were nonresident heirs at law and who were served only by notice of publication and by the mailing of notices to their last known addresses. There were twenty-six defendants who were nonresident heirs at law and who were thus served. Some of them resided in West Virginia, some in Ohio and one in the District of Columbia. Six of those defendants entered their appearance after the decree of the chancellor and consented to the decree. The others did not enter any appearance.

Counsel for the defendant maintain that the heirs at law are necessary defendants; that the proceeding is one *in personam* not *in rem*, and that the substituted service is insufficient to give the court jurisdiction of the heirs at law. We agree with counsel for the defendant that the heirs at law are necessary defendants, but we do not agree with either of the conclusions of counsel that the proceeding is *in personam* and not *in rem*, or that the court has not acquired jurisdiction of the heirs at law by the substituted service. It is apparent that the question whether service by publication and the mailing of notices may be substituted for personal service is a matter of great importance. The question whether

the substituted service is sufficient depends upon the nature of the present proceeding. If the proceeding is one purely *in personam,* the decree of the court would not be binding on the nonresident heirs at law. If, however, the proceeding is a proceeding *in rem,* or a proceeding *quasi in rem,* the nonresident heirs at law would be bound by the judgment of the court notwithstanding that they have been served only by substituted service.

The question when a proceeding is one *in personam* and when it is one *in rem,* or one *quasi in rem,* is not easy of solution. Sometimes a proceeding may partake of two aspects, being at the same time a proceeding *in personam* and a proceeding *in rem* or *quasi in rem.* The line of demarcation between the different classes of cases is not clearly defined. There is much conflict and many variances and distinctions in the decisions. Numbers of the cases contain dissenting opinions. As far as we are able to discover there are no cases in Illinois in which the distinction between proceedings *in rem* and proceedings *quasi in rem* has been discussed. In view of the confusion surrounding the question, all that we can do is to adopt the rule which in our opinion seems to be the one most logically consistent with the general principles announced in analogous cases governing proceedings *in rem* and *quasi in rem.* There is, however, more involved in the case at bar than a mere question of logic. There is a question of justice. For, if jurisdiction cannot be acquired of the nonresident heirs at law by publication and the mailing of notices, the probabilities are that the complainant could never get personal service, and therefore, in effect, would be denied the right to recover the dues and assessments which he paid the defendant. On the other hand, if the substituted service is not sufficient to support a judgment which would bind the nonresident heirs, the defendant might be subjected to another suit by the heirs for their claim against the fund. Furthermore, when the de-

cree determines that the complainant has an equitable claim against the fund evidenced by the benefit certificate, the decree, at the same time, has the effect of adjudicating the rights of the heirs at law to the fund.

On the authority of *Pennoyer v. Neff*, 95 U. S. 714, which is a leading case, counsel for the defendant assert that "where a suit is brought to determine personal rights and obligations of a nonresident, that is where the action is merely *in personam*, substituted service by publication or in any other authorized form upon him is ineffectual for any purpose." That is substantially a correct statement of what the court held, in the case of *Pennoyer v. Neff, supra*. The reason of the rule, as stated by the court (p. 731), is that "the tribunals of one State have no jurisdiction over persons beyond its limits, and can inquire only into their obligations to its citizens when exercising its conceded jurisdiction over their property within its limits." The court also said (pp. 729, 730, 731) that the holding that personal judgments rendered against a nonresident on constructive service were void did not violate the provision of the United States constitution requiring that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State"; that in order to entitle the judgment rendered in any court of the United States to full faith and credit, the court must have had jurisdiction not only of the cause but of the parties. The court said further (p. 733) that "since the adoption of the Fourteenth Amendment to the Federal Constitution the validity of such judgments may be directly questioned, and their enforcement in the State resisted, on the ground that proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law." But the court also held (p. 733) that substituted service by publication is effectual in actions brought against nonresidents where in "connec-

tion with process against the person for commencing the action, property in the State is brought under the control of the court and subjected to its disposition by process adapted to that purpose, or where the judgment is sought as a means of reaching such property, or affecting some interest therein; in other words, where the action is in the nature of a proceeding *in rem.*" The court said (p. 727) that substituted service by publication was sufficient in cases where the object of the action is to reach and dispose of property "by enforcing a contract or a lien" respecting the property; in other words, that "such service may answer in all actions which are substantially proceedings *in rem.*"

The rule announced in *Pennoyer v. Neff, supra,* in regard to the invalidity of judgments *in personam* rendered against nonresidents on substituted service by publication is undoubtedly the rule of general acceptance. But there are decisions which hold that a judgment *in personam* against a nonresident, served by publication, while inoperative beyond the State in which the judgment is rendered, is valid in the State. 50 L. R. A. 577, 578. Some of the cases have been expressly overruled on the authority of *Pennoyer v. Neff, supra.* 50 L. R. A. 578. But even since that case there are decisions which have persisted in conceding that a judgment *in personam* rendered against a nonresident served by publication is valid within the State where the judgment was rendered, while at the same time refusing to recognize or enforce the judgment in another State. 50 L. R. A. 581. However, the doctrine in the case of *Pennoyer v. Neff, supra,* must be regarded as the established rule. The State courts have generally followed that rule. It is the rule adopted by the Supreme Court of Illinois. *Mosier v. Osborn,* 284 Ill. 141, 147; *Bickerdike v. Allen,* 157 Ill. 95, 99; *Cloyd v. Trotter,* 118 Ill. 391, 395. It has been held, however, in Illinois that a personal judgment in an action at law may be rendered against a defendant resid-

ing in the State upon constructive service of process, where the manner of such service is such that it is reasonably probable that the defendant will receive notice of the pendency of the action before judgment is rendered. *Nelson v. Chicago, B. & Q. R. Co.*, 225 Ill. 197, 210.

In regard to a proceeding *in rem* the rule is of universal acceptance that jurisdiction of a nonresident may be acquired by constructive service of process by publication.

The right to resort to constructive service of process is based on the ground of necessity. 21 R. C. L., sec. 32, p. 1288. The common law "never required actual service of process in all cases, but has always provided for a constructive service of process when actual service thereof could not be had, such as the leaving of a copy of a summons at the defendant's residence, and latterly a posting or publishing of notice of the pendency of the suit or proceeding, when the defendant was out of the State or upon due inquiry could not be found, or when he concealed himself so that process could not be served upon him." *Nelson v. Chicago, B. & Q. R. Co., supra*. It has been held that in a proceeding strictly *in rem* no notice is required to be given; that in such a proceeding seizure of the *res*, or what is regarded as equivalent to seizure, is essential, and that the seizure of the *res* is considered sufficient constructive notice. 50 L. R. A. 597, 598. The theory of the law is that when property is brought under the control of the court by seizure, the owner of the property is presumed to know of the proceedings in court from the mere seizure of the property. *Bickerdike v. Allen*, 157 Ill. 95, 100; 2 Black on Judgments, sec. 795, p. 958. The better opinion seems to be that notice of some kind to the owner, in addition to the seizure of the property, is considered necessary. 50 L. R. A. 599.

It has been found difficult to formulate a satisfactory definition of the term *in rem*. The phrase does

not admit of a definition at once comprehensive and exact. It has been described as a proceeding instituted not against the person, but against the thing or subject-matter itself, the state or condition of which is to be determined, the judgment in the proceeding having the effect of binding all parties in interest. 2 Black on Judgments, sec. 792, pp. 954, 955; 23 Cyc., pp. 1406, 1407.

In *Bickerdike v. Allen, supra,* the court said (p. 100) : "A proceeding *in rem* is not merely a direct proceeding against property, but any action between the parties where the direct object is to reach and dispose of property owned by them or of some interest therein. For example, suits by attachment against the property of debtors, suits for the partition of land, to foreclose mortgages, to enforce liens or contracts relating to property, may be regarded as proceedings *in rem* so far as they affect property in this State. (*Pennoyer v. Neff,* 95 U. S. 714.) In such proceedings *in rem,* where the object is to reach and dispose of property within the State, or of some interest therein, · service by publication, or in some mode other than upon the person, may be sufficient. The theory of the law is, that when a man's property is brought under the control of the court by seizure, such seizure informs and notifies him of the proceedings taken for its sale or condemnation. In such cases constructive notice is permitted and becomes effective solely by reason of the attachment or seizure of the property." In *Pennoyer v. Neff, supra,* the court said (p. 727) : "The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale."

Judgments *in rem* are frequently spoken of as binding on "all the world." 15 R. C. L., sec. 84, p. 641.

It has been said that this description is too broad, and that the effect of judgments *in rem* may be better described by stating that the distinguishing characteristic of such judgments is that wherever the obligation of such judgments is recognized and enforced against any person, the obligation is recognized and enforced against all persons. 2 Freeman on Judgments, sec. 606, pp. 1051, 1052. Or, expressed in another way, "a judgment *in rem* is conclusive and binding, not only upon parties and privies but also upon strangers,—upon all persons interested. It is commonly said that such a judgment binds 'all the world.' It is more accurate to say that the judgment is conclusive against any person, in any subsequent controversy, where the grounds of the adjudication, or of the fact of its rendition, or any of its legal consequences, become relevant and material facts. But it must be noted that this broad conclusiveness belongs only to judgments strictly *in rem*." 2 Black on Judgments, sec. 795, pp. 958, 959. Decrees rendered by courts of admiralty come within the strictest definition of judgments *in rem*. 2 Black on Judgments, sec. 796, p. 959.

We are of the opinion that the proceeding in the case at bar is not strictly a proceeding *in rem*. In a proceeding strictly *in rem* the owner of the property proceeded against is entitled to the notice which he is presumed to acquire from the seizure of the property, or what is regarded as the equivalent of seizure, and also to some additional notice such as notice by publication. The seizure in a proceeding strictly *in rem* must be an actual seizure, or what may be regarded as the equivalent of an actual seizure; and the property proceeded against must be tangible property, such for example as may be involved in attachment proceedings, suits for the partition of lands, suits to foreclose mortgages. *Bickerdike v. Allen, supra.* The judgment in such a proceeding is binding upon all

parties in interest whether served by personal notice or not. 2 Black on Judgments, secs. 794, 795, pp. 958, 959. But it is obvious that in order that the presumption reasonably may be indulged that the owner of property is charged with notice of its seizure, or what may be regarded as the equivalent of seizure, the owner must have actual knowledge that he is the owner of the property; or if he has not actual knowledge that he is the owner, he should be possessed of such facts as would charge the ordinarily prudent man with knowledge of ownership. It is true that the purpose of the suit in the case at bar is to enforce an equitable lien of the complainant on a specific fund within the jurisdiction of the court. It is a proceeding against the thing itself, the *res*. The property is within the jurisdiction of the court. But neither the property itself nor the nature of the ownership of the property is of such a character that the seizure, which in the case at bar is represented by the suit in equity against the property, reasonably may be presumed to apprise or notify the nonresident heirs at law that the present proceeding is pending. A judgment in the present proceeding would not be binding upon all parties, privies and strangers as would a judgment if the proceeding was one strictly *in rem*. 2 Black on Judgments, sec. 795, pp. 958, 959.

Is the case at bar one which comes within the class of proceedings variously termed proceedings in the nature of proceedings *in rem*, or substantially *in rem*, or *quasi in rem?* The phrase *quasi in rem* is, perhaps, the most appropriate term. There is much confusion and uncertainty in the decisions as to what constitutes a proceeding *quasi in rem*. The cases are not only conflicting but the opinions in many of the cases are not unanimous. Proceedings *quasi in rem* are described as "all actions or proceedings, the direct object of which is to affect the title, or to enforce liens upon property, or to make it contribute to

the satisfaction of such judgment as may be recovered.'' 1 Freeman on Judgments (4th ed.), sec. 120a, p. 190. Some of the authorities do not draw the distinction between proceedings *in rem* and proceedings *quasi in rem.* 15 R. C. L., sec. 73, p. 630. The failure to recognize the distinction between the two classes of cases has misled the courts in some instances into incorrectly terming cases which are proceedings *quasi in rem* proceedings *in personam.*

Black says: ''Much of the uncertainty and confusion in the definition in the proceedings *in rem* has arisen from the attempt to make that term cover various classes of actions which are not strictly and purely *in rem,* although they exhibit some points of analogy or resemblance which fall within the narrower use of the phrase. It is better to distinguish between proceedings *in rem* and proceedings *quasi in rem.* The latter are assimilated to the former in some particulars,— as in respect to the manner of acquiring jurisdiction, —but are not always attended by the same consequences,—in respect, for example, to the persons bound by the adjudication.'' 2 Black on Judgments, sec. 793, p. 956; *Gamble v. Dawson,* 67 Wash. 72, 80.

In proceedings *quasi in rem* ''the adjudication is, in general, conclusive only upon the persons directly and immediately concerned, or who were made parties by service of process.'' 2 Black on Judgments, sec. 795, p. 959.

The distinction between judgments *quasi in rem* and judgments *in rem* is stated in the Cyclopedia of Law and Procedure as follows: ''Judgments dealing with the status, ownership or liability of particular property, but which are intended to operate on these questions only as between the particular parties to the proceeding, and not to ascertain or cut off the rights or interests of all possible claimants, are so far *in rem* that jurisdiction may be acquired by the seizure or control of the court over the *res,* together with reasonable

constructive notice to parties defendant, but, unlike judgments strictly *in rem*, they are binding only upon the parties joined in the action and thus notified, and have no effect upon the rights or liabilities of strangers." 23 Cyc., p. 1410.

In a proceeding *quasi in rem* no actual seizure of the property is necessary, but the property may be proceeded against by a bill in equity. *Boswell's Lessee v. Otis*, 9 How. (U. S.) 336, 348; *Harris v. Pullman*, 84 Ill. 20, 25, quoting with approval from *Boswell's Lessee v. Otis, supra; Arndt v. Griggs*, 134 U. S. 316, 324; *Amparo Mining Co. v. Fidelity Trust Co.*, 74 N. J. Eq. 197, 210; *Pennoyer v. Neff, supra,* (p. 724), quoting from *Boswell's Lessee v. Otis, supra.*

Applying the foregoing principles relating to proceedings *quasi in rem* to the proceeding in the case at bar, we are of the opinion that this proceeding is one *quasi in rem.* The proceeding is an equitable one directed against the fund in the hands of the defendant, and the fund was created by the dues and assessments paid by the complainant. A judgment *in personam* is not sought against the nonresident heirs at law. The decree contains no order in reference to the nonresident heirs at law. The provisions of the decree relate solely to the fund in the possession of the defendant. The fund, the benefit certificate which is evidence of the fund, the defendant which issued the benefit certificate and which has possession of the fund, the complainant, who is seeking to enforce an equitable lien against the fund, are all within the jurisdiction of the court. There was not such a seizure of the property in the case at bar as would be required to constitute the proceeding one strictly *in rem,* but the suit in equity against the property may be considered by analogy as a sufficient seizure in a proceeding *quasi in rem.* Although reasonably it cannot be presumed that the mere filing of the bill in the present proceeding gave notice to the heirs at law that

property in which they were interested was being proceeded against in a legal proceeding, yet the filing of the bill brought the property, the *res,* before the court, as the property was within the territorial jurisdiction of the court, and that is sufficient in a proceeding *quasi in rem.* The judgment in the present proceeding will be "conclusive only upon the persons directly and immediately concerned, or who were made parties by service of process." 2 Black on Judgments, sec. 795, p. 959. Since the suit is a proceeding, as we think, *quasi in rem,* the service of notice by publication and the mailing of notices were sufficient to give the court jurisdiction over the nonresident heirs at law for the purposes of the suit, and were sufficient to bind the heirs by the decree that has been entered. The fact that, in addition to notice by publication, notices were mailed to the last-known addresses of the nonresident heirs is a circumstance which should be considered in connection with the question of the substituted service. The mailing of the notices serves to show that every reasonable effort was made to give the heirs actual notice of the complainant's pending proceeding. In considering the question of service of process by publication and the mailing of notices as to resident judgment creditors in the case of *Bickerdike v. Allen, supra,* the court emphasized the fact that there was service by the mailing of notices, in addition to publication. The court said (pp. 102, 103): "But this statute does something more than require the publication of the notice; it requires a copy of the notice to be sent by mail addressed to the defendant whose place of residence is stated in the affidavit. Suppose that a defendant resides in this State, and has a known residence here, but conceals himself so that process cannot be served upon him, and that the notice specified in the statute is sent to him by mail. If he receives the notice so sent, he has received personal notice just as much as though a summons was served upon him by the sheriff. The certificate of the clerk

is made proof of the mailing of the notice. 'Proof of the mailing of notices, properly addressed, is prima facie evidence of their having been received by the party addressed.' ''

We are clearly of the opinion that the benefit certificate is property. 32 Cyc. 669; *Ionia County Sav. Bank v. McLean*, 84 Mich. 625, 629; *Prudential Ins. Co. v. Hunn*, 21 Ind. App. 525, 529; *Steele v. Gatlin*, 115 Ga. 929, 931. After the death of Brookover the fund, of which the benefit certificate is evidence, became fixed. It has been expressly held that after the death of the insured the policy of insurance becomes fixed and the right to the fund is vested. *Chartrand v. Brace*, 16 Colo. 19, 23.

In the case of *Royal Arcanum v. McKnight, supra,* the court recognized that the fund, which was evidenced by a benefit certificate, was property when the court held (p. 359) that after the death of the insured a beneficiary who had paid the dues and assessments on the certificate had ''an equitable interest in the fund'' to the amount of such dues and assessments with interest. To the same effect are the following cases: *National Union v. Keefe, supra; Royal Arcanum v. Tracy, supra; Covenant Mut. Benefit Ass'n v. Sears, supra.* Whether a fund such as the fund in the case at bar would be the subject of actual seizure is immaterial, as we have shown that in a proceeding *quasi in rem* the property may be proceeded against by a bill in equity, and that such a proceeding is the equivalent of seizure.

The conclusions which we have expressed are supported by decisions in analogous cases. There are no authorities directly in point in Illinois, but there are many decisions in other jurisdictions. The decisions in Illinois refer only to two classes of cases—proceedings *in personam* and proceedings *in rem*. In the case of *Town of Virden v. Needles*, 98 Ill. 366, although the proceeding was considered by the court from the aspect of a proceeding *in rem*, the decision

will serve as an authority which tends to support our view that the case at bar is one *quasi in rem*. In the case of *Town of Virden v. Needles, supra,* a bill in equity was filed to enjoin the payment of any money in the hands of the state and county treasurers on account of certain bonds and annexed coupons, and also prayed that the bonds be declared void. The court said (p. 369): ''The bondholders were not personally before the court and no personal decree could, therefore, be rendered against them. The notice by publication only enabled the court to give effect to the proceeding so far as it was one *in rem*.'' The court further said (p. 370): ''Had the bonds and coupons been under the control of the court, or their holders been *personally* within its jurisdiction, their cancellation might have been decreed and enforced; but without having the bonds and coupons under its control, or their holders *personally* within its jurisdiction, that was impossible.''

In *Perry v. Young,* 133 Tenn. 522, the complainant, on whose life a policy of insurance had been issued, and which had been assigned by him to his mother, brought a suit in equity against the Mutual Benefit Life Insurance Company and others, to reform the policy so as to conform with an agreement when the assignment was made that on his mother's death the policy should revert to him. The mother had died before the suit was brought. Notice by publication was had upon nonresident defendants who were distributees of the complainant's mother. It was objected by the insurance company that the court had not acquired jurisdiction of the nonresident defendants by publication; that personal service would be required to bind their interests; and that the decree of the court would not protect the insurance company. The court held (p. 527) that the suit was a proceeding *quasi in rem*. After holding that the insurance policy was within its control, the court said (p. 526): ''The court thus having control of the *res,* can settle the

status and rights of the parties with respect to the insurance policy, although one of the persons interested therein, under the assignment as it now stands, is a nonresident, and made a defendant only by publication.'' There were two dissenting opinions in the case, but in those opinions the case was considered largely according to the rules governing a proceeding strictly *in rem.* One of the dissenting opinions laid stress on the fact that there was no seizure of property; and furthermore, that the policy of insurance was not property. We have seen that no actual seizure is necessary in a proceeding *quasi in rem,* and that a policy of insurance is property. In the other dissenting opinion it was said that the right of the nonresident defendant in the policy of insurance was incorporeal and attached to no tangible property. According to the weight of authority, no tangible property is required in a proceeding *quasi in rem.* Tangible property capable of being actually seized is only necessary in a proceeding strictly *in rem.* The policy of insurance was property. The mother, the assignee of the policy, had died and the fund had become fixed. *Chartrand v. Brace, supra.* Property, therefore, was involved which was of a sufficient character for a proceeding *quasi in rem;* and the bill in equity which proceeded against the property could be considered as the equivalent of seizure of the property in a proceeding *quasi in rem.* Moreover, no personal judgment was entered against the nonresident defendant. The case of *Perry v. Young, supra,* is criticized in a note reviewing the case in L. R. A. 1917 B, pp. 393, 394. The review does not recognize fully the distinction which the majority opinion draws between a proceeding *in rem* and one *quasi in rem.* The review states that ''the issue between the parties    *    *    * was not such as could even create the relation of debtor and creditor between the defendant and the plaintiff,'' As we understand the case the issue was

not one of debtor and creditor, but was an equitable one which involved the right of the complainant to have his assignment of the policy of insurance to his mother reformed. The review further states that the case of *New York Life Ins. Co. v. Dunlevy*, 241 U. S. 518, "in effect overrules" the case of *Perry v. Young, supra.* We do not agree with that conclusion. The case of *New York Life Ins. Co. v. Dunlevy, supra*, involved several questions—one relating to an attachment against funds in Pennsylvania of the defendant, who was a nonresident; another in regard to a garnishment proceeding against the insurance company; and still another in respect of an interpleader proceeding brought by the insurance company to determine the validity of an assignment to the defendant by her father. In regard to the interpleader proceeding, which is the one most pertinent to the case of *Perry v. Young, supra*, the court in the case of *New York Life Ins. Co. v. Dunlevy, supra*, held that service by publication on the nonresident defendant was insufficient to give the court jurisdiction. The court said that the "interpleader initiated by the company was an altogether different matter" from the attachment and garnishment proceedings; that so far as the nonresident defendant was concerned, the interpleader "was an attempt to bring about a final and conclusive adjudication of her personal rights." It follows from the opinion of the court that an interpleader is a proceeding *in personam* and not *in rem,* and that view seems to be in accordance with the general rule that an interpleader proceeding is one *in personam.* 23 Cyc., pp. 3, 4. In our view, however, there is a material difference between the case of *Perry v. Young, supra*, and an interpleader proceeding. The question in the case of *Perry v. Young, supra,* did not involve primarily a dispute relative to a fund between rival claimants as in an interpleader proceeding. The suit in the case of *Perry v. Young, supra*, was directed primarily against the policy of insurance in regard to

which the complainant claimed specific equitable rights. In the case of *Pennoyer v. Neff, supra,* the court held (p. 727) that substituted service by publication was sufficient "in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or a lien respecting the same.  *  *  *  In other words, such service may answer in all actions which are substantially proceedings *in rem.*"

In the case of *Devlin v. Roussel,* 55 N. Y. Supp. 386, one purpose for which the action was brought was to compel an accounting as to a trust fund. A necessary party to the action was a nonresident who was served by notice of publication. The court said (p. 388): "It is plain that such substituted service could not be made·upon a nonresident defendant so as to bind him to a personal liability by judgment.  *  *  *  The action, although in form *in personam,* as every purely equity suit must be, nevertheless relates to a fund within the jurisdiction of the Supreme Court of New York, and actually within this State, and is *quasi in rem,* if not *in rem;* and, the *res* being within the jurisdiction, there is something for a judgment settling rights to operate on."

In the case of *Title & Document Restoration Co. v. Kerrigan,* 150 Cal. 289, an action to quiet title was brought under a statute authorizing an action for the quieting of titles of real estate in case of the loss or destruction of records. The statute provided for the service by publication as to nonresident claimants. The contention was that the proceeding was *in personam* and no judgment could be rendered against persons to be affected without giving them personal notice. The court said (p. 308): "In any view the proceeding contemplated by the act is *quasi in rem,* —that is to say, the purpose of the proceeding is not to establish an 'infinite personal liability' against any defendant, but is merely to affect the interest of the defendant in specific real property within the State ·

which has at the outset of the proceeding been brought within the control of the court.''

In the case of *Amparo Mining Co. v. Fidelity Trust Co., supra,* a bill in equity was filed for the purpose of having the ownership of the complainant declared, as against the defendant, of certain treasury stock in the complainant company. Some of the certificates of stock were in Pennsylvania, but the complainant company, which had issued the shares, was a corporation existing under the laws of New Jersey. The court held that the *res* being thus situated in New Jersey, the court could settle the rights of the parties in respect of the *res* although the defendant was a nonresident and had notice only by publication. The court said (pp. 201, 202, 203): ''The authorities which control this court indicate, I think, the following as the essential elements of an action *quasi in rem:* 1. A *res* located within the territorial limits of the State in such a way that the State can, if it see fit to do so, exercise absolute power to control and dispose of it. 2. A course of judicial procedure, the object and result of which are to subject the *res* to the power of the State, directly by the judgment or decree which is entered as distinguished from a course of procedure which only affects or disposes of the *res* by compelling a party to the action to control or dispose of the *res* in accordance with the mandate of the judgment or decree. 3. A course of judicial procedure on its face directed specifically toward the *res* so as to disclose this *res* to the defendant when reasonably notified of the action. * * * The origin of the jurisdiction of our courts in actions *quasi in rem* is to be found in the power of the sovereign State to exercise control over all objects to which that power can be directly applied. The State must control all property within its territorial limits. Parties interested in that property and residing within the State, or voluntarily coming into the State in order to have their rights in respect of the property in question

enforced or protected, have a right to be heard in the courts of the State, and the utmost that can be demanded on the part of nonresident defendants is that they shall be fairly notified of the action so as to have an ample opportunity to appear and be heard therein. When these conditions exist the rights of all parties interested in the *res* are determined by *due* process of law.'' The court further said (pp. 210, 213): ''I can find no warrant in reason, and none in the authorities, disregarding a few *dicta,* which make the actual seizure of the *res* by an officer of the court essential to the status of the action as one *quasi in rem.*  *  *  *  It is not the actual seizure of the *res* which is the essential element of an action *quasi in rem,* but the power to seize the *res* and to seize it in the action. *  *  *  My conclusion is that the present action has all of the essential characteristics of an action *quasi in rem,* and that the defendant having been duly notified of the suit so as to give it an ample opportunity to appear and make defense therein, will, if it refrains from appearing, be bound by the decree so far as the same relates to the status of the *res,* and in such case the defendant cannot maintain that it has been deprived of property without due process of law.''

In the case of *Giblin v. North Wisconsin Lumber Co.,* 131 Wis. 261, it was held in a taxpayer's action that a judgment canceling and declaring void certain county orders is *quasi in rem,* and establishes prima facie as against all persons the status of such orders. The court said ('p. 270): ''Certain decrees in equity are classed as *quasi in rem,* and such decrees may be offered in evidence as against any person with respect to the particular property described therein, for the purpose of establishing prima facie the status of that property.''

In the case of *Clem v. Given's Exr,* 106 Va. 145, a bill in equity was filed to compel the specific performance of a written contract to convey real estate. One of the defendants was a nonresident and was served

by publication. The court held (p. 149) that the proceeding was one *quasi in rem* and that the service by publication was sufficient to give the court jurisdiction of the nonresident defendants.

In the case of *Corson v. Shoemaker,* 55 Minn. 386, an action was brought to reform the description of real property in a deed. Some of the defendants were nonresidents and were served by publication. The court said (p. 398): "If this is not an action *in rem,* it certainly is one in the nature of such an action. \* \* \* The decree or judgment in this action will relate to the land described in the complaint and not to any judgment *in personam.*"

In the case of *Arndt v. Griggs,* 134 U. S. 316, in an action to quiet title, the court held that the court acquired jurisdiction over a nonresident under a statute authorizing that a nonresident could be brought into court by publication in a suit to determine the title to real estate. The court cited with approval (p. 324) the case of *Boswell's Lessee v. Otis, supra,* to the effect that when jurisdiction is acquired by a procedure against property within the jurisdiction of the court, in a proceeding substantially *in rem,* it is immaterial whether the proceeding against the property be by an attachment or bill in chancery. The court also said (p. 323): "All the States by proper statutes authorize actions against nonresidents, and service of summons therein by publication only, or service in some other form no better; and, in the nature of things, such must be done in every jurisdiction, in order that full and complete justice may be done where some of the parties are nonresidents."

In the case of *Robinson v. Kind,* 23 Nev. 330, the court said (pp. 342-343): "The suit at bar is brought to cancel a deed of conveyance of real and personal property situated in Eureka and White Pine counties, Nevada, and revest the title in the plaintiff, and is an action in part under the above authorities, 'for the re-

covery of real property or of an estate or interest therein,' and necessary parties defendant may be brought in by publication. The court has like power as to the personal property.  *  *  *  The case at bar is substantially a proceeding *in rem*. Its direct object is to reach and dispose of the property of the parties described in the complaint. The decree of the trial court is substantially a decree *in rem*. The court, by mere force of its decree, annulled the decree of conveyance and vested the title to the property in the plaintiff.''

In the case of *Chesley v. Morton,* 41 N. Y. Supp. 463, the court said (p. 464): ''Where a suit is brought against a nonresident by substituted service, it must partake of the nature of an action *in rem,* or jurisdiction will not be acquired to enter a valid judgment.  *  *  *  The complaint, when scrutinized, will be seen to have two aspects. It seeks to obtain a judgment against the defendant for the amount claimed to be due by him to the firm of Morton & Chesley. In this aspect it is purely personal in its nature, but the demand for a receiver of the partnership effects, with power to sell, shows that more is sought than a merely personal judgment. There can be no doubt that a member of a dissolved partnership has a lien upon its assets. He is not compelled to rely upon the solvency of his copartner, but is entitled to the specific application of the joint assets to the payment of the sum due him upon the dissolution.  *  *  *  Regarding the plaintiff's suit in this aspect,—that is, as one brought to enforce a lien upon the personal assets in this State, —it comes precisely within the provisions of subdivision 5 of section 438 of the Code; and there can be no doubt that it is an action of this class which may be begun through service by publication. Specific property within the limits and jurisdiction of the State is sought to be subjected to a lien in favor of the plaintiff.''

In the case of *Jones v. Rutherford,* 26 App. Cas. (D. C.) 114, it was held that a check drawn by the treasurer of the United States in payment of a claim against the government is personal property within the meaning of the statute which authorizes that summons by publication may be substituted for personal service, to enforce liens against real or personal property. The suit in this case was one in equity to enforce a specific lien created by a contract in which it was agreed that an attorney was to have as compensation for his professional services in the matter of the claim of his client against the United States, a sum equal to one-third of the claim; and this amount in express terms was made a lien upon the claim and upon any draft or money that might be paid or issued for the claim. A nonresident defendant was served by notice of publication and the court held that this was proper service.

In the case of *Quarl v. Abbett,* 102 Ind. 233, an action was brought to adjudge a transfer of stock to be fraudulent and to decree that the property be sold as on execution. An attachment was issued and the shares of stock were levied upon. Some of the defendants were nonresidents and were served by notice of publication. The contention was that no jurisdiction of the nonresident defendants was obtained. The court said (p. 239): "The issuing of the writ and the levy by the sheriff brought the property within the jurisdiction of the court. But we need not stop at this point, for the power to issue a writ, effective to seize the property, was jurisdiction. * * * There was therefore jurisdiction of the subject of the action, and the notice, under provisions of the statute providing for notice by publication, gave jurisdiction of the person so far as necessary to determine the rights of the litigants in the particular property within the jurisdiction of the court. * * * Any question affecting the status of the specific property within the jurisdic-

tion of the court and the rights of the parties in the property may be tried. The purpose of notice by publication is to give the best notice practicable to nonresident defendants, and thus enable the court to fully decide the controversy respecting property within its jurisdiction, no matter what form the question may assume.''

In the case of *Gamble v. Dawson, supra*, a suit in equity was brought to determine the title of stock of a corporation. The court held that the claimant of the corporate stock was entitled to bring an action to recover the stock at the place where the company was incorporated, notwithstanding the certificates were in the possession of a nonresident. Substituted service on a nonresident stockholder was held (p. 83) sufficient to bring him ''within the jurisdiction of the court.'' The answer alleged (p. 75) that ''no writ of attachment, garnishment, order or process of any kind whatsoever has been issued out of this court, or at all, or levied upon any of the property mentioned in said complaint, whereby said property might or could be brought within or under the jurisdiction of the court.'' The court said (p. 80): ''Constructive notice to a nonresident is sufficient to give jurisdiction, and the ancillary proceeding, such as an attachment, is not necessary in an action of this kind; for the property of the shareowner or the holder of the shares, though he be a nonresident, is already within the jurisdiction of the court, and it is the property being within the jurisdiction of the court which is the essential aid to jurisdiction, rather than any particular notice or means by which the property is brought within the jurisdiction. The substituted service, such as was made upon the defendant in this case, thereby becomes a completed service, giving jurisdiction over his person, the *res* thereby being within the jurisdiction of the court.''

In the case of *Jellenik v. Huron Copper Mining Co.*,

177 U. S. 1, a suit in equity was brought "against a Michigan mining corporation and certain individual defendants holding shares of stock in the corporation." The defendants were citizens of Massachusetts. The complainants claimed to be the real owners of certain shares of stock of the corporation, the certificates for which were held by the Massachusetts defendants, and the complainants sought a decree removing the cloud upon their title to such shares and adjudging that they were entitled to the shares. The court held that the defendants in Massachusetts were necessary parties to the suit, and that they could be proceeded against in respect of the stock in question in the mode and for the limited purposes indicated in an act of Congress, which authorized proceedings by publication against absent defendants in any suit commenced in any circuit court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon, the title of real or personal property within the district where such suit is brought. The court also held that the stock held by the citizens of Massachusetts was to be considered personal property "within the district" where the suit was brought; that the certificates of stock were only evidence of the ownership of the shares, and the interest represented by the shares was held by the company for the benefit of the true owner.

The case of *Goodman v. Niblack,* 102 U. S. 556, was a proceeding in equity to enforce a lien on a fund which was "in reach of the court." There were non-resident defendants who were served by notice of publication. The court said (p. 563): "This is a proceeding in equity to enforce a lien on the fund which is within reach of the court, and as the trustees and complainant have the requisite citizenship, section 738 of the Revised Statutes provides a remedy for inability to serve process by an order of publication. If they appear, the suit will proceed as usual. If they

do not appear, the decree, so far as it affects the fund in the hands of Niblack, will bind them; and this is all that is necessary to give the court jurisdiction to grant the relief prayed for by the complainant.''

In the case of *Morgan v. Mutual Benefit Life Ins. Co.,* 104 N. Y. Supp. 185, an action was brought upon a life insurance policy by the assignee of the policy against the insurance company to recover the amount due to the assignee. The beneficiaries were made co-defendants with the insurance company. The beneficiaries were all nonresidents. The insurance company admitted its liability upon the policy, but contended that there were conflicting claimants to the insurance fund. The court held that the beneficiaries were proper parties but not necessary parties. The court said (p. 186): ''The question which the insurance company seeks to have determined upon this appeal is whether a judgment so obtained against it and its codefendants will be binding upon its codefendants as between itself and them, and so protect the insurance company in paying out the moneys due on the policy in accordance with the judgment which may be rendered in the action.'' The court also said (p. 190): ''If the subject-matter of this suit and the cause thereof is specific personal property within the State, although not attachable, it may be acted upon by the courts of this State and the adjudication thereof be binding upon all the parties to the suit as a judgment *in rem.''* In holding that the action could be maintained the court said (p. 191): ''If such an action as this is not maintainable in the courts of this State, and the insurance company may resist payment on the policy without making all of the persons claiming an interest in the moneys due therein parties to the suit, serving them personally with process, it is difficult to see how the company can be compelled to pay at all, unless all of the persons are in accord and unite in one suit or voluntarily appear therein, since the claimants

reside in five different States." There was a dissent-
ing opinion in the case. On appeal to the Court of
Appeals, 189 N. Y. 447, the judgment of the Appellate
Court was unanimously affirmed. The Court of Ap-
peals held (p. 452) that the defendants were proper
and necessary parties and that the policy of insurance
was property.

In the case of *Bennett v. Fenton,* 41 Fed. 283, it was
held that under a statute which authorized one in pos-
session of land to sue any person claiming an interest
therein "for the purpose of determining such adverse
claim," a judgment in such an action against a non-
resident defendant, upon service by publication, was
valid, the action being in the nature of a proceeding
*in rem.*

In the case of *Reeves v. Pierce,* 64 Kan. 502, the
court held that in an action against a nonresident in
which it was sought to trace a trust fund into specific
property held by him with notice of the trust, service
by publication alone was sufficient to give the court
jurisdiction. The court said (p. 504): "The service
that was made, of course, did not warrant a personal
judgment and none was in fact rendered. The lan-
guage of the petition presented shows that the purpose
of the action was to trace the trust fund and fasten it
on to specific property into which it is alleged to have
passed."

In the case of *Taylor v. Security Mut. Life Ins. Co.,*
77 N. Y. Supp. 1012, it was held that in an action on an
insurance policy, notice by publication on one outside
the State, having possession of the policy and claim-
ing the proceeds of the policy by virtue of an assign-
ment, will be deemed good where whatever judgment
rendered can be fully enforced, and will be binding on
all parties concerned. The court said (p. 1013):
"The insurance company, against which recovery is
sought, is a party to the action. If service by publica-
tion is held good, the rival claimants for the amount of

the policy will be parties to the action, and whatever judgment is rendered can be fully enforced and will be binding on all parties concerned.  If the litigation related to the possession of the policy, an obviously different case would be presented, and one in which the decree of the court would be a futility, if it should determine the question of the right of possession against a nonresident, who had the policy with him in another State.  But as this action is brought, the controversy passes beyond the question of the right to possess the policy and comes to the ultimate question of who is entitled to the money to be obtained thereon.''

Counsel for the defendant have cited a number of authorities in other states than Illinois which they maintain clearly support their contention that the case at bar is purely an action *in personam,* and not one *quasi in rem,* and that, therefore, the service on the nonresident heirs by notice of publication and by mailing of notices is not sufficient to give the court jurisdiction.  Though it should be conceded that the authorities relied on by counsel for the defendant support their contention, we would not follow the authorities, but would treat them merely as opposing cases announcing decisions contrary to what we consider the better rule.  In our opinion, some of the cases cited by counsel for the defendant may be readily distinguished from the case at bar, and none can be considered as an authority directly contrary to the rule we have adopted.  Three of the cases, namely, *New York Life Ins. Co. v. Dunlevy, supra; Cross v. Armstrong,* 44 Ohio St. 613 and *Washington Life Ins. Co. v. Gooding,* 19 Tex. Civ. App. 490, 49 S. W. 123, held that an interpleader proceeding was not a proceeding *in rem.*  The case of *New York Life Ins. Co. v. Dunlevy, supra,* we have previously discussed.  The two latter cases were decided according to the rules applicable to a proceeding strictly *in rem.*  But aside from that, the case at bar is materially different from

an ordinary interpleader proceeding. The complainant in the case at bar is not disputing a claim to the fund with the nonresident heirs, as if the case was one of an interpleader. The complainant is proceeding primarily against the fund in a suit to enforce an equitable lien against the fund.

In the case of *National Council of Knights & Ladies of Security v. Scheiber,* 137 Minn. 423, 163 N. W. 781, cited by counsel for the defendant, which was an action brought by the insurance company against the insured to cancel a policy of insurance, the question whether the proceeding was one *in personam* or one *in rem* was not involved. The court expressly stated (p. 425): "Counsel for the plaintiff do not claim that in this action constructive service by publication or personal service outside of the State confers jurisdiction." Notwithstanding this statement by the court, the court said (p. 424): "The action before us is not *in rem.* There has been no seizure of the property. It is not an action affecting real property." From the language quoted it is apparent that the court was testing the case by the rules governing a proceeding strictly *in rem.* The authorities that we have cited in support of our position clearly hold that a proceeding may be one *quasi in rem* even though there is no actual seizure and no real property.

In the case of *Tremblay v. Aetna Life Ins. Co.,* 97 Me. 547, 55 Atl. 509, cited by counsel for the defendant, the plaintiff, P. F. Tremblay, brought an action of debt in the State of Maine to recover the amount due upon a life insurance policy. He claimed under an assignment executed both by the assured and the assured's wife, who was the beneficiary named in the policy. A party by the name of Cloutier, claiming the fund under color of a prior assignment executed by the husband alone, had brought suit in the Superior Court of the Province and District of Quebec and recovered judgment for the insurance money, which had been previously deposited with the

provincial treasurer in accordance with the revised statutes of Quebec. This judgment the insurance company interposed as a defense to the action commenced by P. F. Tremblay in Maine. In the proceeding in Quebec, P. F. Tremblay, who was a nonresident, was served by notice of publication. In that part of the opinion of the Supreme Court of Maine which is pertinent to the controversy in the case at bar, the Supreme Court of Maine said (p. 557): "Such a writ and such a service would not give our courts jurisdiction upon which a valid judgment could be rendered *in personam.* Nor would the proceedings upon their face furnish a basis for a judgment *in rem,* even if we assume that the statutes of the Province, or the *lex rei sitæ* are the same as our own. *By our statutes a judgment in rem can be entered only against the property of the debtor, certain liens excepted.* \* \* \* *P. F. Tremblay was not the debtor;* therefore no valid judgment *in rem* could be rendered against the insurance money in the hands of the provincial treasurer, of which he held a legal title. The Quebec court, therefore, had no jurisdiction over the plaintiff Tremblay *in personam* or *in rem,* and could not render a binding judgment." It is obvious that this case has no application to the case at bar.

In the case of *Evans v. Charles Scribner's Sons,* 58 Fed. 303, cited by counsel for the defendant, a bill in equity was filed to set aside transfers of certain insurance policies on the life of the complainant's deceased husband, which transfers were alleged to have been obtained by duress and fraud. The Charles Scribner's Sons, who were nonresidents, were served under section 8 of the Revised Statutes, which allowed "service under order of court upon a non-resident when any suit is commenced to enforce any legal or equitable lien upon or claim to any property, real or personal." The court said (p. 304): "As to these policies, the suit does not seek to enforce 'any legal or equitable lien upon or claim to any property, either real or per-

sonal.' * * * Even if the insurance policies in issue could be said to be, in any fair sense, such personal property as is contemplated by the statute, the policies are in the State of New York and not in this district.'' In the case at bar the complainant is seeking to enforce an equitable lien, and the benefit certificate is within the jurisdiction of the court.

In the case of *Stockbridge v. Phœnix Mut. Life Ins. Co.*, 193 Fed. 558, cited by counsel for the defendant, a suit in equity was brought by Ida V. Stockbridge against the insurance company. The nature of the suit is not stated, and neither the allegations of the bill nor the facts are set forth. The court refers to a "Mrs. Ringwalt" as being a necessary party to the suit and as being a nonresident. The court said that the court was without jurisdiction unless the case came within the act of Congress which specified means by which jurisdiction could be acquired in any suit to enforce any legal or equitable lien on real or personal property within the district where the suit was brought. The nature of "Mrs. Ringwalt's" claim is not stated by the court. It is probable that the court is referring to "Mrs. Ringwalt" when the court said (p. 560): "The absent defendant has, in law, a claim against the insurance company as the beneficiary under the two policies." The court says further (p. 560): "It strikes me that 'Mrs. Ringwalt' can assert and enforce her claim against the insurance company without coming into this district. It is a claim which, from its inherent nature, is transitory, attaches to her person and can be taken with her wherever she goes. It is like the contents of a handbag, in which she might carry the usual accessories of a journey." The court referred (p. 560) to the case of *Jellenik v. Huron Copper Mining Co.*, *supra*, and stated that "jurisdiction was sustained there because the stock was in Michigan"; but added: "In our suit there is no specific property here over which the parties are in dispute. The policies do not represent any such property. If

the insurance company had some fund on which 'Mrs. Ringwalt' was asserting a right of ownership by reason of her policies, the case would be analogous. There is no such fund, and 'Mrs. Ringwalt' makes no such assertion.'' The vague and indefinite report of this case sheds little light on the controversy in the case at bar. The court said, however, that ''if the insurance company had a fund in which 'Mrs. Ringwalt' was asserting a right of ownership by reason of her policies,'' the case of *Jellenik v. Huron Copper Mining Co., supra,* would be analogous. In the case at bar the defendant has a fund in its possession against which the complainant is asserting an equitable lien by reason of the payment of the dues and assessments which the complainant made. Furthermore, the holding of the court in the case of *Stockbridge v. Phœnix Mut. Life Ins. Co., supra,* that the policies of insurance do not represent property is opposed to the weight of authority.

In the case of *Murphy v. Ford Motor Co.,* 241 Fed. 134, cited by counsel for the defendant, an action was brought by a trustee in bankruptcy against the Ford Motor Company and the Hoosier Harness Company to set aside an alleged preference made by the bankrupt in favor of the Ford Motor Company within four months of the adjudication in bankruptcy. The Ford Motor Company admitted the debt and offered to pay the money into court. The Hoosier Harness Company was a nonresident and was served by publication. In holding that it did not acquire jurisdiction of the Hoosier Harness Company by the substituted service, the court said (pp. 135, 136): ''The trustee's counsel claim that the fund is in the custody of the court, because of the offer of the Motor Company to pay the money into court, and that, therefore, the *res,* as well as personal property, is within the 'district.' * * * This debt of the Motor Company to the trustee, or to the Harness Company, as the case may be, is not personal property within the district. This

court has no possible control over it.'' In the case at bar the *res,* namely, the fund, and the benefit certificate which is evidence of the fund, and which is property, are within the jurisdiction of the court and the court has control of them.

In reaching our opinion that the case at bar is a proceeding *quasi in rem,* we are aware of the fact that there may be cases in which different views are held from those which we have expressed, but we think that on an examination of those cases it will be found that the majority of them do not recognize the distinction between proceedings *in rem* and proceedings *quasi in rem,* but are decided according to the rules relating to proceedings strictly *in rem.*

For the reasons stated in the opinion the decree of the chancellor is affirmed.

*Decree affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.